**AMERICAN NATIONAL INSURANCE COMPANY, Appellant,**

v.

**Ruby M. ALLEN, Appellee.**

No. 4154.

Court of Civil Appeals of Texas.

Waco.

Aug. 8, 1963.

Rehearing Denied Aug. 29, 1963.

Beard, Kultgen & Beard, Waco, for appellant.

Dunnam & Dunnam, Waco, for appellee.

WILSON, Justice.

Appellee, as beneficiary, recovered judgment on a jury verdict in her action on a life insurance policy issued by appellant August 16, 1961 insuring the life of her husband.

Insured applied for the insurance August 4, 1961, and was given a medical examination by Dr. Lattimore, a general practitioner employed by appellant for that purpose. His report recited that after careful inquiry and examination of insured he found no evidence of past or present disease of heart or blood vessels. In his written statement to the medical examiner insured answered "No" to questions as to whether he had ever had or been treated for dizziness, high blood pressure, diseases of the heart, chest pain, or other physical disorder (except "glasses") and answered that he was in good health. He answered "Yes" to the question: "Have you ever had X-ray, electrocardiogram, blood sugar, or any special laboratory tests"? The explanation to this answer as written by Dr. Lattimore and signed by insured recited, "Chest X-Ray, State Health Department, Mobile Unit, 1956 at St. Petersburg, Fla., found O. K." and "nervous indigestion a week or 10 days 1957. Full recovery lost 2 or 3 days. No recurrence. No sequelae. Dr. C. C. Smith, Waco, Texas."

There was evidence to show that insured consulted Dr. Smith, a heart specialist, in May, 1957, complaining of recurrent chest pains and numbness radiating into left shoulder and arm, and that his electrocardiogram was "not normal"; that he gave a history of previous chest pain diagnosed by a Houston physician as coronary artery disease. Dr. Smith prescribed an antispasmodic and pavorel phosphate, drugs used in treatment of coronary diseases to dilate the coronary blood vessels. In November, 1957 he was admitted to a hospital with abnormally high blood pressure under confirmed diagnosis of acute myocardial infarction and arteriosclerotic heart disease, having suffered an occlusion. After 10 days'

treatment he was dismissed from the hospital, and was at home about 30 days. A part of the heart muscle had died, being replaced by scar tissue. The following January and November he was again examined after complaining of continued substernal chest pain. In July, 1959 he reported to Dr. Smith an attack of severe weakness with cramping, but the examination showed his condition to be normal. In March, 1960 insured was again examined by Dr. Smith, complaining of a severe chest pain and symptoms the doctor said were commonly associated with heart disease, for which medication used in treating heart disease was prescribed. No evidence of acute myocardial damage was noted. In March, 1961 he was again examined, with symptoms of weakness, dizziness and radiating chest pain. In November of that year Dr. Smith again examined him, the complaints being the same. An antispasmodic, belladona, phenobarbital and duotrate for treatment of heart disease were prescribed. He was then suffering from heart disease, according to Dr. Smith. Insured was not seen by Dr. Smith from that time until he died in the hospital in July, 1962, the cause of death being given as acute myocardial infarction. Dr. Smith states that in his opinion insured was suffering from arteriosclerotic heart disease "from 1957 on"; that heart damage from a first such attack reduces heart reserve so that succeeding attacks are more likely to be fatal; that there was no way to cure the arteriosclerotic condition after it occurred.

The beneficiary testified she never knew insured had heart trouble; that he never had an attack of indigestion that caused him to go to a doctor, but he went to the doctor in 1957 because "he lifted too heavy a load of tar and he was supposed to climb this ladder with it and he went for heart strain"; that when insured went to the hospital the doctor told her "he had just strained some ligaments around his heart and all from lifting too heavy", and that her husband was "aware that this was what was wrong with him."

The physician making the insurance medical examination for appellant testified he did not talk to Dr. Smith at the time of making his report. Dr. Smith testified he had no recollection of having talked to the examining doctor.

Appellant says it is entitled to judgment because the jury found insured "intentionally answered 'no' to the question" in the application inquiring whether he had ever had chest pain or disease of the heart; that the answer was false; that insured knew or should have known the answer was false; that insured so answered for the purpose of inducing appellant to issue the policy; and that the company relied on the answer in issuing the policy. The jury also returned a negative answer to an issue inquiring whether the condition of insured's heart and arteries when the policy was issued was one of the causes of his death, but answered affirmatively that the acute myocardial infarction he sustained in 1957 made his death from a later myocardial infarction more likely.

Appellant says that these findings by the jury established its pleaded defense and precluded recovery. Appellee replies that it was necessary to obtain a specific finding of "intent to deceive", and that without this finding the defense is incomplete. Appellee made no objections to the charge. Appellee relies on Pioneer American Ins. Co. v. Meeker, Tex.Civ.App., 300 S.W.2d 212, writ ref. n. r. e.; Roosth v. American General Life Ins. Co., Tex.Civ.App., 330 S.W.2d 652, writ ref. n. r. e.; Universal Life & Acc. Ins. Co. v. Burden, Tex.Civ. App., 294 S.W.2d 855, no writ; Colorado Life Co. v. Newell, Tex.Civ.App., 78 S.W.2d 1049, writ ref.; Great Southern Life Ins. Co. v. Doyle, 136 Tex. 377, 151 S.W.2d 197; American Central Life Ins. Co. v. Alexander, Tex.Com.App., 56 S.W.2d 864. These and other decisions, it is true, contain language to the effect that the misrepresentation must have been made with intent to deceive. None of these cases, with one exception to be noted, may be said to support appellee's position that it is

necessary to submit this element as an issue so worded.

In the Alexander case the insurer did not plead that "the insured's answers were intentionally made", and the trial court's action in sustaining special exceptions was held to be proper. In the Doyle case the jury specifically found insured did not know her answers were false and that she did not make them for the purpose of inducing the company to insure. In Meeker, a suit to cancel, no issue was submitted on intent except as to intent to deceive, and the jury made a negative finding. There were further findings, however, that insured did not know the answers were false, that he could not have known that a physician had found his blood pressure was above normal, and that although he could have known the falsity of a representation concerning the last doctor to examine him, the question was not particularly called to his attention. It was found the insurer "was in possession of facts sufficient to put it on notice as to the truth or falsity of the representations." In Burden there was an express finding insured did not make the false statement "to induce appellant to issue the policy." In Newell the jury found insured did not know she was suffering from an ailment, and insurer pleaded nothing relating to intent or reliance. The opinion of one of the three justices in the Roosth case, Tex.Civ.App., 330 S.W.2d 652, may be said to support appellee's contention. It is not the opinion of that Court, however. The justice concurring declined to adopt appellee's position as the basis for affirmance, saying: "It is my further view that the issues as submitted comprehended 'intent to deceive' ". The judgment properly rested on other grounds.

■ In our opinion the test applicable is stated by the Supreme Court in Clark v. National Life & Acc. Ins. Co., 145 Tex. 575, 200 S.W.2d 820, 823. There insurer requested no issues relating to its pleaded defense of fraud, and none were submitted. In answer to the only issue submitted, the

jury found insured was in good health when the policy was issued. The Court said that to avoid the policy for a false answer insurer's burden was to plead and prove (a) the answers made by insured were false or untrue, (b) the "insured knew, or should have known, that they were untrue" and (c) that he made them wilfully and "with the intention of inducing the insurer to issue him a policy." In the present case the jury found the myocardial infarction of 1957 made his death from a later myocardial infarction more likely. The policy contained an incontestability clause.

██ That it is not necessary to submit a specific issue on intent to deceive, but as said in the Roosth concurring opinion, this element is comprehended by the issues here submitted, is settled authoritatively, we think, in Texas Industrial Trust v. Lusk, Tex.Civ.App., 312 S.W.2d 324, 327, writ refused. There the jury found the representation was made, that it was false, that it was made with knowledge it was untrue, that defendant relied on it, and that it was made with intent to induce defendant to act on it. Appellant complained that the trial court failed to submit an issue inquiring as to fraudulent intent, and whether the representations were "made to deceive". Justice Pope said, "The utterance of a known false statement, made with intent to induce action, in our opinion, is equivalent to an intent to deceive." This is the rule we think we are required to follow, and the Supreme Court has held that insurer's burden is satisfied by establishing insured knew or should have known the representation was untrue. But for another finding to be noticed, the foregoing findings would entitle appellant to judgment.

Appellant contends that the trial court erred in failing to disregard a jury finding that insured was "in good health" at the time of delivery of the policy, and in failing to define the quoted term. In view of remand, it is not necessary to pass on this, or appellant's points 1, 5, 6, 10–12.

In answer to a series of 18 issues the jury found, in effect, that after insured's death an agent of insurer told the beneficiary that if she would furnish proof of death the company would pay her the face of the policy promptly; that the agent acted within the apparent scope of his authority and then knew the facts as to the condition of insured's health at the time of delivery of the policy (which the jury had found was then "good") ; that he intended for the beneficiary to rely thereon, and she did so; that the statement induced her "to purchase a new home" and "sell her bedroom furniture"; that this was "a material change in her position"; and the statements that the proceeds would be paid promptly "was a waiver" by the company "of all defenses it may have had to the payment of the proceeds." Appellant having made numerous valid objections to the issues, did not obtain an order on its motion to disregard these findings, but attacks them here and in its motion for new trial. Appellee urges they establish waiver and estoppel.

██ These findings constitute no basis for estoppel. An essential element of equitable estoppel is that a party acts to his prejudice. Jones v. Mid-State Homes, Inc., Tex.Sup., 356 S.W.2d 923, and is induced to change his position in some material respect for the worse. To be material, the altered position must bear some substantial relationship to the subject matter. Ralston Purina Co. v. U. S., 58 F.2d 1065, cert. den. 289 U.S. 732, 53 S.Ct. 594, 77 L.Ed. 1481; 3 Pomeroy, Equity, 5th ed., Sec. 812; 22 Tex.Jur.2d 684. If it be assumed that appellee's purchase of a home and sale of furniture was a change of position for the worse and resulted in injury (which is not shown) these acts bear no reasonable relationship to the subject matter, and estoppel is not in the case.

██ The findings recited above do not establish waiver. Waiver is the intentional relinquishment of a known right, "with full knowledge of the material facts." Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855,

865; Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74, 78. The beneficiary pleaded the insurer had knowledge of insured's prior chest pain and heart condition; that if he was not in good health, it had knowledge of that fact when the policy was issued, and that after insured's death the agent, with full knowledge of the prior condition of insured's health, chest pains and heart trouble, promised plaintiff the company would pay the face of the policy if she would file proof of death. No issue was submitted or requested, however, as to appellant's knowledge of previous chest pain or heart trouble. Appellant objected to the issues submitted on this and numerous other grounds. The issue submitted and found was that the agent knew the material facts pertaining to the condition of insured's "health at the time of the delivery of the policy". This, the jury had found, was "good". We are unable to find evidence of probative force that the company or the agent knew insured had any pre-issuance disease of the heart before the promise to pay was made. The agent testified he did not know of insured's previous myocardial infarction or heart trouble when he talked to the beneficiary. The effect of the jury findings is that the agent and appellant knew insured was "in good health" at the time of delivery of the policy, and the agent knew he was "in good health" (at the time of such delivery) when he thereafter told the beneficiary payment would be made.

■ By another separate issue, No. 3, the court inquired whether any right appellant "may have had to cancel the policy because of the condition of deceased's health was waived" by it, to which the jury answered "Yes". Defendant's objections that this was a general issue which did not restrict the jury to any specific rights waived or conduct constituting waiver were overruled. The issue was a global submission of a question of law, and the objections should have been sustained. Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849, 853; Knutson v. Ripson, Tex.Sup., 354 S.W.2d 575, 576; Alexander v. Tips, Tex.

Civ.App., 268 S.W. 965. See Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 103.

Since the issues relating to estoppel and waiver were erroneously submitted, and since the judgment is apparently based thereon, the judgment is reversed and the cause remanded.