Marvin **RANDLE**, Dewayne Randle, and Randle Builders, Inc., Appellants,

v.

**NCNB TEXAS NATIONAL BANK, Appellee.**

No. 05–90–01083–CV.

Court of Appeals of Texas, Dallas.

June 24, 1991.

---

John P. Knouse, Dallas, for appellants.

Lindy F. Jones, Laura L. Worsham, Dallas, for appellee.

Before ENOCH, C.J., and CHADICK[1] and CARVER,[2] JJ.

## OPINION

CHADICK, Justice (Retired).

This is an appeal from a summary judgment in a suit to recover deficiencies occurring upon foreclosure of secured real estate notes and associated relief. We modify the judgment of the trial court, and as modified, affirm.

As plaintiff, NCNB Texas National Bank, N.A. [NCNB] sued Marvin Randle,[3] Dewayne Randle, and Randle Builders, Inc. [collectively "the Randles" hereinafter] as defendants. Final judgment was entered in favor of NCNB on May 21, 1990; thereafter on June 7, 1990, Marvin Randle filed

---

1. The Honorable T.C. Chadick, Justice, Retired, Supreme Court of Texas, sitting by assignment.

2. The Honorable Spencer Carver, Justice, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. Marvin Randle, although listed in the style of this cause, did not come forward as an appellant on this appeal.

a petition in the United States Bankruptcy Court, thereby staying further proceedings as to him.

The Randles have raised four points of error; clarity will be aided by considering the points out of numerical order. The Randles' third point of error is that the trial court abused its discretion by refusing to permit them to file a cross-action. The parties agree that the pleading in question was technically a counterclaim, but it will be referred to as a cross-action in the discussion that follows.

NCNB's motion for summary judgment was filed on November 22, 1989, and notice was given to the Randles. Approximately three months later, the Randles filed their Second Original Answer and on the next day filed the cross-action in question. At that time, NCNB's motion for summary judgment was set for hearing on March 1, 1990. Copies of the Randles' pleadings were not served on plaintiff's attorneys, but they became aware of the instruments in the court's file jacket and responded to them. These pleadings were filed without leave of court and without the consent or written agreement of counsel for NCNB.

The record in this Court contains no statement of facts or bills of exceptions. However, along with other material, the transcript brings forward the following: (a) the Randles' First Original Amended Answer, filed January 19, 1990; (b) their Second Amended Original Answer, filed February 21, 1990; (c) their original cross-action, filed February 22, 1990; and (d) their motion for leave to file a trial amendment to their First Amended Original Answer, filed March 1, 1990. The record before this Court also includes: (1) NCNB's objection to and request to strike the Randles' Second Original Answer and original cross-action, filed February 28, 1990; (2) the court order striking the Randles' Second Amended Answer and original cross-action, entered April 10, 1990; and (3) the order striking the Randles' responses to NCNB's motion for summary judgment, entered April 25, 1990.

The file date endorsed on the Randles' cross-action shows it was filed seven days prior to the trial date. (Such marking on the Randles' second amended answer shows it to have been filed less than seven days prior to the trial date.) Neither of the pleadings are shown to have been filed fourteen days before trial date. Texas Rule of Civil Procedure 63 and Dallas Local Court Rule 1.9 govern the filing of the Randles' pleadings under discussion. Rule 63 contains two prerequisites to an incontestable filing. First, pleadings such as these under consideration shall be filed at such time "as not to act as a surprise to the opposite party." Second, if a party desires to file such pleading within seven days of the date of trial, leave of court must first be obtained. The Rule 63 seven-day time frame was expanded to fourteen days prior to trial by the then in-effect Local Rule 1.9, which provides "except by written agreement of all counsel of record, no amendment to a pleading shall be filed less than fourteen (14) days prior to the date a case is set for trial."

■ On appeal, the burden of demonstrating trial court error in refusing to permit filing of an amended pleading under Rule 63 rests upon the party contending the action was not justified. *Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980); *Brown Lex Real Estate Dev. Corp. v. American Nat'l Bank–South,* 736 S.W.2d 205, 206 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Plata v. Guzman,* 571 S.W.2d 408, 411 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ The record under review does not disclose evidence, procedure, or circumstances showing the judge erred in refusing to permit the Randles to file their cross-action (as well as their second amended original answer) on grounds that the pleadings in question operated as a surprise to NCNB. On appeal, it must be presumed the trial court did not abuse its discretion in refusing to permit filing of an amended pleading in the absence of a statement of facts or bill of exception showing the facts relevant to presentation of the pleading. *Hardin,* 597 S.W.2d at 350 (Campbell, J., concurring); *Herrin Transp. Co. v. Parker,* 425 S.W.2d 876, 878 (Tex.

Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.). Should the record have been otherwise as to Rule 63, there is likewise a void in proof of compliance with Local Rule 1.9. The Randles have not questioned the local rule's validity.[4] No abuse of discretion is shown. The Randles' third point of error is overruled.

 Preliminary to discussion of the Randles' second point of error, it must be determined what, if any, pleadings were before the trial court at the time summary judgment was entered. The trial court not only refused to permit the filing of the Randles' cross-action, but also ordered the Randles' second amended answer stricken from the record. NCNB argues that "once the second amended original answer was stricken, defendants [Randles] had no pleadings on file."

NCNB's position is based upon its interpretation of the provisions of Texas Rule of Civil Procedure 65. The rule provides that an amended pleading "entire and complete in itself" becomes a substitute for the pleading it replaces. NCNB argues that when the Randles filed their second amended original petition, their first amended original petition was superseded and no longer constituted a viable part of the record. No case authority is cited in support of NCNB's argument. Rule 65 reads:

Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause, unless some error of the court in deciding upon the necessity of the amendment, or otherwise in superseding it, be complained of, an exception be taken to the action of the court, or unless it be necessary to look to the superseded pleading upon a question of limitation.

Tex.R.Civ.P. 65.

One Court of Civil Appeals, in discussing the status of superseded pleadings, uses this language:

Under the provisions of Rule 65, T.R.C.P., when the plaintiff's second amended original petition was stricken, such action had the effect of restoring as a live pleading plaintiff's first amended original petition, which was a sufficient pleading, unless exceptions should be sustained to it, and in that event the plaintiff's original petition would be restored as a live pleading, on which he would have a right to go to trial unless this pleading was also stricken.

*Vordenbaum v. Ackermann*, 393 S.W.2d 927, 929 (Tex.Civ.App.—San Antonio 1965), *aff'd*, 403 S.W.2d 362 (Tex.1966).

In affirming, the Texas Supreme Court said:

Undoubtedly, the second amended original petition was defective in the particulars pointed out by defendants' motion.... However that may be, the only pleading which was stricken was the second amended original petition and if plaintiff decided not to file another amendment, such decision did not render the cause subject to dismissal. As pointed out by the Court of Civil Appeals, the trial court did not order a repleader and plaintiff has violated no order of the court. The ground set forth in the motion to strike related to form rather than substance and it was not contended that the petition failed to state a cause of action.

*Vordenbaum*, 403 S.W.2d at 363. Here there is no contention that the Randles' first amended original petition did not state a cause of action; it undertook to state two and no exception was urged. Reason and the cited authority supply credible grounds for holding the Randles' first amended original petition should and will be treated as a viable and effective pleading at the time of trial.

 The Randles' second point of error is that a summary judgment was precluded

4. Local Rule 1.9 has since been amended to be consistent with Rule 63, as required by Texas Rule of Civil Procedure 3a. Rule 1.9 now provides that a party may amend pleadings, without leave of court, up to seven days prior to trial. *See United Marketing Technology, Inc. v. First USA Merchant Services, Inc.*, 812 S.W.2d 608 (Tex.App.—Dallas, 1991, writ denied).

by the existence of a genuine issue of fact raised by evidence supporting their defense of promissory estoppel pleaded in their first amended original answer. Their response to NCNB's motion for summary judgment specified that:

> A factual issue exists as to whether Plaintiff, NCNB TEXAS is estopped to enforce the promissory notes and/or guarantee agreements ... by reason of an agreement and representations made by representatives of Plaintiff renegotiating and restructuring the terms of [n]otes ... prior to foreclosure, which were relied upon by Defendants to their legal detriment. Specific reference is given to the Affidavits of Daniel Schreimann, ... MARVIN RANDLE, DEWAYNE RANDLE, and Randy Randle....

> The fact issue exists as to whether Plaintiff acted in bad faith in foreclosing upon the property securing [n]otes ... referred to above after entering into an Agreement to restructure and renegotiate the terms of the notes.

The Randles' point of error and argument under it narrows their contentions to the issue of whether their summary judgment evidence tended to prove they substantially relied upon NCNB's alleged promises to their detriment. "The requisites of promissory estoppel are: (1) a promise, 2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983). The affidavits the Randles placed in evidence give details of an alleged understanding reached between the parties to restructure and postpone payment of the notes in question. They argue that the Randles "left the meeting understanding that a binding agreement had been made...." Foreclosure on property securing the notes was effected February 7, 1989. Dewayne Randle's affidavit contains the following:

> In reliance upon the representations that were made by the representatives of NCNB TEXAS in the meeting, of February 2, 1989, I personally contacted the three purchasers under contracts for

deed involving property secured by the four notes of RANDLE BUILDERS, INC., to wit: David and Kelly Ferebee ...; D.W. Higgins and wife, Charolotte Higgins ...; and Mark A. Swindell and Terry L. Swindell.... I reassured them that agreements had been reached with NCNB TEXAS by RANDLE BUILDERS, INC. and that there would be no foreclosure on their residence on February 7, 1989. When NCNB TEXAS breached its agreement and the following Monday, February 6, 1989, I was compelled to advise all of the purchasers that their property would be foreclosed upon. The purchasers under the contracts for deed were understandably upset, threats were made and there was talk of litigation being filed against MARVIN RANDLE personally and the corporation. For the present date no litigation has been filed although I understand that the Statute of Limitations has not yet run.

David W. Schreimann's affidavit states:

> In the meeting of February 2, 1989, the legal representatives of NCNB TEXAS clearly understood there were three existing contracts for deed, ... whose residential property was being directly affected by the foreclosure proceeding scheduled for February 7, 1989.

> The agreements and representations by the representatives of NCNB TEXAS were affirmative, qualified and made in a manner to induce reliance by my clients and myself. Mr. Rheaume and Mr. Bedell knew or should have known from that reliance would be placed upon their affirmative statements and that my clients could be placed in a position of legal jeopardy with the contract for deed purchasers should their statements be untrue.

Randy Randle's affidavit says in part:

> Mr. George Bedell advised us at the conclusion of the meeting that it would take approximately two weeks for Jackson and Walker to draw the new notes for execution for RANDLE BUILDERS, INC. and for MARVIN RANDLE as to the Sandalwood Note. There was no question in my mind as I left the meeting

that a binding agreement had been made with NCNB TEXAS to restructure the notes of RANDLE BUILDERS, INC. and the Sandalwood Note of MARVIN RANDLE and that RANDLE BUILDERS, INC. could safely contact the three buyers under the contracts of deed and assure them there would be no foreclosure on their properties.

\* \* \* \* \* \*

In reliance upon the representations that were made by the representatives of NCNB TEXAS in the meeting, RANDLE BUILDERS, INC. contacted the three purchasers under contracts for deed involving property secured by the four notes of RANDLE BUILDERS, INC., to wit: David and Kelly Ferebee ...; D.W. Higgins and wife, Charlotte Higgins ...; and Mark A. Swindell and Terry L. Swindell.... The purchasers were reassured that agreements had been reached with NCNB TEXAS by RANDLE BUILDERS, INC. and that there would be no foreclosure on their residence on February 7, 1989. When NCNB TEXAS breached its agreement and the following Monday, February 6, 1989, RANDLE BUILDERS, INC. was compelled to advise all of the purchasers that there [sic] property would be foreclosed upon. The purchasers under the contracts for deed were understandably upset, threats were made and there was talk of litigation being filed against me personally and the corporation. For the present date no litigation has been filed although I understand that the Statute of Limitations has not yet run.

Other affidavits in the record were similar in wording and tone.

The Randles' substantial reliance and detriment argument, as we understand it, is that the Randles had contracted to deed to named persons parcels of real property that were subject to NCNB's deed of trust liens securing payment of the notes at issue. These contractual purchasers were reassured by the Randles after the February 2, 1989, conference that the NCNB lien would not be foreclosed on the property each had contracted to buy. These contrac-tual purchasers were upset when the assurances previously given were found to be ineffective and the lien on the property they contracted to buy was foreclosed upon. These buyers threatened litigation, and the statute of limitations had not barred suit against the Randles at the time of trial. The question here is whether the foregoing facts and circumstances are sufficient to raise a fact issue that the Randles suffered a detriment by reliance upon the alleged agreement to restructure.

The record shows the contracts with the buyers were made before the February 2, 1989, meeting and that when made the contracts were subordinate to NCNB's lien on record. There is no claim that the Randles' reliance upon alleged promises made and agreements reached at the February 2, 1989, meeting increased or diminished enforceable contractual rights, obligations, or liabilities of the Randles to the buyers under the contracts for deed. Necessarily, the detriments the Randles suffered by a breach of the alleged February 2nd agreement could only be a disturbance of amicable relations between the buyers and the Randles that foreclosure of the notes apparently provoked. That is, that breach had the effect of causing the buyers to threaten to file suit to enforce some unidentified right, obligation, or liability, growing out of the Randles' assurances to them.

Examination of the summary judgment evidence does not reveal facts tending to show the buyers had an actionable claim against the Randles. If the assurances of nonforeclosure by the Randles to the buyers contained assertions or promises creating or imposing duties, obligations, and liabilities apart from the buyers' existing contract, no evidence thereof is found in the record. The record indicates the buyers' threats of suit were groundless and empty.

It will be assumed the evidence otherwise tends to prove the essential elements of estoppel. Upon analysis, the statements in the affidavits showing a disturbance of relations between the Randles and the buyers is indeterminate as to detriment, loss, or injury, and are so empty of definite

content or meaning that it does not tend to show any ascertainable detriment to the Randles. Neither does the evidence produced raise an issue of fact as to whether NCNB's violations of its alleged promises gained it an undue advantage. No error is shown. *See Robert Gordon, Inc. v. Ingersoll–Rand Co.,* 117 F.2d 654, 661 (7th Cir. 1941); *Ward v. Clark,* 435 S.W.2d 621, 624 (Tex.Civ.App.—Tyler 1968, no writ); *American Nat'l Ins. Co. v. Allen,* 370 S.W.2d 140, 143 (Tex.Civ.App.—Waco 1963), *rev'd on other grounds,* 380 S.W.2d 604 (Tex. 1964). The Randles' second point of error is overruled.

■ The Randles' first point of error reads:

The trial court erred in excluding evidence supporting the affirmative defense of promissory estoppel based upon the Statute of Frauds and the Parole [sic] Evidence Rule.

On the basis of the discussion and disposition of point of error two, the point now under consideration becomes immaterial. In disposing of the second point of error we reach the conclusion that the summary judgment evidence did not raise a genuine issue of fact tending to prove the Randles suffered a detriment, a necessary element of their promissory estoppel defense. Inasmuch as the estoppel defense could not prevail, the exclusion of evidence complained of would not be calculated to cause the rendition of an improper judgment. *See O'Hara v. Hexter,* 584 S.W.2d 310, 312 (Tex.Civ.App.—Dallas 1979, no writ); *Argonaut Ins. Co. v. Titus,* 347 S.W.2d 372, 374 (Tex.Civ.App.—Fort Worth 1961, no writ); *Meaney v. Nueces County Navigation Dist. No. 1,* 222 S.W.2d 402, 408 (Tex. Civ.App.—San Antonio 1949, writ ref'd).

■ The Randles' fourth point of error asserts that the trial court erred in entering an order exceeding its jurisdiction. The judgment stated:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's judgment may be a non-dischargeable claim in bankruptcy under Section 11 U.S.C. 523(a), and the Court hereby declares that Plaintiff is granted authority

hereby to pursue the non-dischargeability of such claim in the bankruptcy court if and when any of the Defendants MARVIN RANDLE, DEWAYNE RANDLE and RANDLE BUILDERS, INC., file bankruptcy.

The Randles cite no statutory or case law in support of this point of error. However, under argument and authorities in their brief is this statement:

A State District Court has no authority nor jurisdiction to determine whether or not the Judgment it enters may be a nondischargeable claim in bankruptcy under Section 11 U.S.C. 523(a) of the United States Bankruptcy Code, which is exclusively within the jurisdiction of the United States Bankruptcy Court, which Appellee has admitted in its response to Appellant's Motion for New Trial.

Texas Rule of Civil Procedure 301 states: "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or in equity." NCNB's brief states that it "does not deny that the authority and jurisdiction to determine exception to discharge in bankruptcy under 11 U.S.C. § 523 of the United States Bankruptcy Code is exclusively within the jurisdiction of the federal bankruptcy courts." It argues that this provision of the judgment does little more than restate the law in this area and suggests that if it is determined that the trial court exceeded its jurisdiction by entering the adjudication that the judgment be reformed to delete such provision. Point of error four is sustained. The judgment will be modified to vacate the order. As modified, the judgment is affirmed.