

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-260-CV

CAROLEE OKLAND, JEREMY          APPELLANTS
ROGERS, DEEPAK MALHOTRA,
AND DINAH LEFFERT,
INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY
SITUATED

V.

TRAVELOCITY.COM, INC. AND          APPELLEES
TRAVELOCITY.COM, LP

------------

### FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellants Carolee Okland, Jeremy Rogers, Deepak Malhotra, and Dinah

Leffert, individually and on behalf of all others similarly situated, appeal the trial

---

[1] *See* Tex. R. App. P. 47.4.

court's orders striking Appellants' third amended petition, denying Malhotra's and Leffert's motion to intervene, and granting Appellees Travelocity.com, Inc. and Travelocity.com, LP's (collectively "Travelocity") plea to the jurisdiction and motion to dismiss for lack of subject matter jurisdiction. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2005, Bruce Deaton, Steven Polapink, and Carolee Okland filed this putative class action lawsuit against Travelocity, alleging claims for violation of the Texas Deceptive Trade Practices Act ("DTPA"), conversion, imposition of a constructive trust, and money had and received. The original class action petition alleged that customers who reserve hotel rooms through Travelocity are automatically assessed a "Taxes and Fees" charge. According to the petition, the "'Taxes' that Travelocity levies against customers are in amounts neither required by, nor tendered to, local or state taxing authorities, and [the taxes] are not directly related to what Travelocity actually contracts to pay the hotel in taxes at the time it purchases the room." Moreover, the "Fees" charged "do not relate to specific services, but instead serve as a hidden and/or misrepresented revenue stream on top of the revenue generated from the difference between what Travelocity charges for a room and what it actually pays for that room." The original class action petition alleged

2

that the plaintiffs booked rooms through Travelocity during the class period and were charged "taxes and fees" and, consequently, "excessive room rates."[2]

On March 20, 2006, the trial court signed an order of nonsuit in which it noted and confirmed that Polapink had nonsuited his claims against Travelocity. On August 11, 2006, the trial court signed an order of nonsuit noting and confirming that Deaton had nonsuited his claims against Travelocity. This left Okland as the sole remaining named plaintiff until—according to Travelocity—Jeremy Rogers joined the lawsuit as a putative class representative on April 9, 2007.[3]

On August 8, 2007, Appellants filed a third amended class action petition listing Okland, Rogers, Leffert, and Malhotra as named plaintiffs and asserting an additional cause of action for breach of contract.[4] Travelocity thereafter filed a motion to strike Appellants' third amended class action petition, arguing

---

[2] The proposed class consists of those consumers who, from October 1, 2002, to the present, "(1) reserved hotel accommodations online through [Travelocity], (2) received a quote that specified a price for the accommodations plus a charge for 'taxes and fees,' and (3) paid Travelocity for the accommodations plus the 'taxes and fees.'"

[3] Appellants do not dispute that Rogers joined the lawsuit as a putative class representative on April 9, 2007. *See* Tex. R. App. P. 38.1(g) (stating that in a civil case, the court will accept as true the facts stated unless another party contradicts them).

[4] This is the earliest dated pleading in the record identifying Leffert and Malhotra as named plaintiffs.

that the petition unfairly surprised and prejudiced them and demonstrated a lack of diligence by Appellants. The trial court granted Travelocity's motion on November 30, 2007.

On February 14, 2008, Travelocity filed its plea to the jurisdiction and motion to dismiss for lack of subject matter jurisdiction, arguing that Okland, the only remaining originally-named plaintiff, lacked standing to assert her statutory and common law claims because she did not pay for the transactions made the basis of her claims and, therefore, suffered no injury capable of redress by the lawsuit. Travelocity argued that because Okland lacked standing at the time suit was filed, the trial court lacked subject matter jurisdiction over all of the class claims, necessitating dismissal of the entire suit. Travelocity additionally and alternatively argued that Rogers lacked standing because the only basis for the claims he asserted against Travelocity were business trips for which he was later reimbursed.

Before the trial court ruled on Travelocity's plea to the jurisdiction, Leffert and Malhotra filed a motion to intervene in the lawsuit, contending that their claims regarded the same facts as those of Okland and Rogers and that their intervention would not result in any prejudice to Travelocity. The trial court denied the motion to intervene. That same day, the trial court indicated orally that Travelocity's plea to the jurisdiction and motion to dismiss as to Okland

4

was granted. The trial court gave Rogers additional time to demonstrate that he used Travelocity to book a personal trip, but it ultimately signed an order granting Travelocity's plea to the jurisdiction and motion to dismiss for lack of subject matter jurisdiction in its entirety. This appeal followed.

### III. TRAVELOCITY'S PLEA TO THE JURISDICTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In their third issue, Appellants argue that the trial court erred by granting Travelocity's plea to the jurisdiction and motion to dismiss for lack of subject matter jurisdiction. Appellants argue that both Okland and Rogers have standing to assert their claims for violation of the DTPA, breach of contract, imposition of a constructive trust, and money had and received. Travelocity replies that the entire lawsuit was appropriately dismissed because Okland lacks standing.

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226

5

(Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The determination of whether a trial court has subject matter jurisdiction begins with the pleadings. *Miranda*, 133 S.W.3d at 226. The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *See Bland ISD*, 34 S.W.3d at 555. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d 228. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id*. at 227–28; *Bland ISD*, 34 S.W.3d at 555. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial

6

court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 227–28; *Bland ISD*, 34 S.W.3d at 555.

### B. Standing

The requirement of standing is implicit in the open courts provision of the Texas Constitution and contemplates access to the courts only for those litigants suffering an injury. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). Standing focuses on the question of who may bring an action, and it is determined at the time suit is filed in the trial court. *Id.*; *Town of Fairview v. Lawler*, 252 S.W.3d 853, 855 (Tex. App.—Dallas 2008, no pet.). A plaintiff does not lack standing simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008).

Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445. If a party lacks standing to bring an action, the trial court lacks subject matter jurisdiction to hear the case. *Id*. at 444–45; *Lawler*, 252 S.W.3d at 855. If a court lacks subject matter jurisdiction in a particular case, then it lacks authority to decide that case. *Novak*, 52 S.W.3d at 708.

In the class action context, whether the named plaintiff is a proper class representative is not part of the standing inquiry. *Basham v. Audiovox Corp.*,

7

198 S.W.3d 9, 12 (Tex. App.—El Paso 2006, pet. denied) (citing *Novak*, 52 S.W.3d at 710). A named plaintiff must first satisfy the threshold requirement of individual standing at the time suit is filed, without regard to the class claims.[5] *Novak*, 52 S.W.3d at 710; *see also Tarrant County Comm'rs Court v. Markham*, 779 S.W.2d 872, 876 (Tex. App.—Fort Worth 1989, writ denied) ("We believe the better rule is that the plaintiff must have a personal stake in the litigation at the time of filing suit."). A named plaintiff's lack of individual standing at the time suit is filed deprives the court of subject matter jurisdiction over the plaintiff's individual claims and the claims on behalf of the class. *Novak*, 52 S.W.3d at 710; *see Inman*, 252 S.W.3d at 307 ("If the named plaintiffs in a putative class action do not have standing to assert their own individual claims, the entire action[] must be dismissed.").

Standing to sue may be predicated upon either statutory or common law authority. *Williams v. Lara*, 52 S.W.3d 171, 178–79 (Tex. 2001); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 252 (Tex. App.—Dallas 2005, no pet.). The common law standing rules apply except where standing is statutorily conferred. *SCI Tex. Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 153 (Tex.

---

[5] "[T]he fact that unnamed class members have standing adds nothing to the inquiry of whether the named plaintiff is a proper party with standing to raise issues generally." *Novak*, 52 S.W.3d at 710 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20, 96 S. Ct. 1917, 1925 (1976)).

App.—El Paso 2007, pet. denied) (op. on reh'g). To establish common law standing, a plaintiff must show a distinct injury and a real controversy between the parties which will actually be determined by the judicial declaration sought. *Id*. at 153–54; *see also Inman*, 252 S.W.3d at 304–05 ("For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical.").

When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Hijar*, 214 S.W.3d at 154. To meet the DTPA's standing requirement, a complaining party must plead and prove that it is a "consumer." Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp. 2008); *Jones v. Star Houston, Inc.*, 45 S.W.3d 350, 356 (Tex. App.—Houston [1st Dist.] 2001, no pet.). To qualify as a consumer, the person must have sought or acquired goods or services by purchase or lease, and the goods or services purchased or leased must form the basis of the complaint. Tex. Bus. & Com. Code Ann. § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). A plaintiff's standing as a consumer is established by his relationship with the transaction, not by a contractual relationship with the seller. *Kennedy v. Sale*, 689 S.W.2d 890, 892–93 (Tex. 1985); *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.). Thus, a person

9

need not be a direct purchaser to satisfy the requirement that he seek or acquire goods or services by purchase or lease; in very limited situations, a third-party beneficiary may qualify as a consumer of goods or services as long as the transaction was specifically required by or intended to benefit the third-party and the good or service was rendered to benefit the third party. *See Kennedy*, 689 S.W.2d at 892–93; *Lukasik*, 21 S.W.3d at 401.

## C.     No Named Plaintiff Had Standing When Suit was Filed

### 1.     Okland's DTPA Claim

The relevant jurisdictional evidence shows that Okland is employed at Okland Construction in the accounts payable department. Okland Construction is a corporation; Okland's husband is Vice President and his brother is President.[6]  Okland travels "a lot" with her husband, and she uses a travel agent or the Internet on the office computer to make travel arrangements for her husband's business trips.[7]  Okland used Travelocity's website to book two trips that form the basis of her claims against Travelocity:  one to Scottsdale, Arizona, and one to Jackson, Wyoming.  Okland did not recall any particulars

---

[6]⬆ Okland Construction performs "big" jobs "all over the United States" and has approximately 500 employees.

[7]⬆ Okland confirmed that her son has a computer at home (but she never uses it to make travel arrangements over the Internet) and that there are no other computers that she has ever used to access the Internet for purposes of booking travel.

10

about the trip to Jackson, but she did recall that the purpose of the Scottsdale trip was for (1) "Thanksgiving, taking our family down" and (2) business. Although Okland claimed that the Scottsdale trip was partly for Thanksgiving, she used the company credit card to pay for the Scottsdale trip, and she specifically confirmed that the "company"—not her or her husband—paid for the trip. Okland Construction also paid for the trip to Jackson. At her deposition, when Okland stated that Okland Construction paid for the trip, she also said, "But my husband was the owner so it's the same pocket."

Appellants argue that "[b]ased on these facts, Okland clearly meets the definition of a [consumer] within the meaning of the DTPA." We disagree. Although Okland made the reservations, the evidence is undisputed that she did not personally pay for the Scottsdale and Jackson trips; Okland Construction paid for the trips. That Okland herself booked the trip and went to Scottsdale with her husband does not in and of itself make her a consumer under the DTPA because Okland Construction—not Okland—purchased Travelocity's services. *See* Tex. Bus. & Com. Code Ann. § 17.45(4); *Cameron*, 618 S.W.2d at 539 (stating that to be a consumer under the DTPA, the person must have sought or acquired goods or services *by purchase or lease*). Okland Construction has never asserted any claims against Travelocity, and Appellants' contention that Okland and Okland Construction are "the same pocket" is

11

without merit because it is contrary to basic principles of corporate law relating to recovery for harm incurred by a corporation. This is true even if Okland was a shareholder of Okland Construction, which there is no evidence that she was.[8] *See Swank v. Cunningham,* 258 S.W.3d 647, 661 (Tex. App.—Eastland 2008, pet. denied) (stating that a cause of action against one who has injured a corporation belongs to the corporation); *Redmon v. Griffith*, 202 S.W.3d 225, 233–34 (Tex. App.—Tyler 2006, pet. denied) (stating that "a plaintiff who seeks individual redress based on allegations concerning wrongs done to a corporation lacks standing," that "a corporate shareholder has no individual

---

[8] At the hearing on Travelocity's plea to the jurisdiction and motion to dismiss, the trial court questioned Appellants about the legal implications concerning their contention that Okland and Okland Construction are the "same pocket." The following exchange occurred:

The Court: And you're trying to, knowingly, lay open the personal liability of the Okland family for any injuries that might be caused by this business by saying it's the same pocket. Are you serious about that?

[Appellants' attorney]: I'm not attempting to lay open their liability for anything, Your Honor. I'm simply - -

The Court: Well, I would hope not. But that's what you're doing. If you're taking the position that the corporation is the individuals, aren't you laying them open for liability claims? Have you cleared with Carolee Okland and her family that the position you're taking in this case would basically admit that the corporations are a sham, and it's one pocket, and that they don't any longer have any corporate protection?

12

cause of action for personal damages caused solely by a wrong done to the corporation," and that "to recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation").

Further, Okland is not a consumer as a result of some benefit that she incurred stemming from the transaction between Okland Construction and Travelocity. *See Kennedy*, 689 S.W.2d at 892–93; *Lukasik*, 21 S.W.3d at 401. Although part of the reason for the trip to Scottsdale was for Thanksgiving, the evidence does not demonstrate that Okland Construction paid for the hotel bookings because it was specifically required to do so by Okland or because the transaction was specifically intended to benefit Okland; Okland testified that Okland Construction paid for the trip because her husband "will go into the office and work or go to the different job sites." Okland's benefit, if any, derived from the transaction between Okland Construction and Travelocity is incidental.[9] *See Serv. Corp. Int'l. v. Aragon*, 268 S.W.3d 112, 117 (Tex. App.—Eastland 2008, pet. filed) (explaining distinction between primary intended beneficiary and incidental beneficiary).

Appellants argue that the cases relied upon by Travelocity are distinguishable because they were determined at the summary judgment level,

---

[9] Thus, the cases cited by Appellants are inapposite. *See Chamrad v. Volvo Cars of N. Am.*, 145 F.3d 671 (5th Cir. 1998); *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420 (5th Cir. 1992).

13

not at the motion to dismiss level. But standing is a component of subject matter jurisdiction, which can be raised at any time. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445; *Cadle Co. v. Bray*, 264 S.W.3d 205, 210 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

We hold that the trial court did not err by granting Travelocity's plea to the jurisdiction and motion to dismiss for want of subject matter jurisdiction on the ground that Okland did not have standing at the time suit was filed to pursue her DTPA claim against Travelocity. We overrule this part of Appellants' third issue.

### 2. Okland's Common Law Claims

Okland did not plead a claim for breach of contract in the original class action petition; she limited her common law claims in that petition to conversion, imposition of a constructive trust, and money had and received. Okland pleaded a claim for breach of contract in the third amended class action petition, but the trial court struck that petition.[10] The record does not contain a first amended class action petition or a second amended class action petition. Thus, the record does not contain a pleading that was not struck in which Okland asserted a common law claim for breach of contract. *See Randle v.*

---

[10] Appellants argue in their first issue that the trial court abused its discretion by granting Travelocity's motion to strike Appellants' third amended class action petition, but we overrule that issue below.

14

*NCNB Tex. Nat'l Bank*, 812 S.W.2d 381, 384 (Tex. App.—Dallas 1991, no writ) (reasoning that an amended petition that has been struck restores a previous pleading as a live pleading). Appellants have not provided this court with a sufficient record to show that the trial court erred by granting Travelocity's plea to the jurisdiction due to Okland's alleged standing to assert her common law claim for breach of contract.

Nonetheless, to the extent we may determine whether Okland has standing to pursue her breach of contract claim, we hold that she did not have standing to assert that claim or her other common law claims. There is no evidence that Okland suffered a distinct, particularized, actual injury because Okland Construction, not Okland, paid for the trips to Scottsdale and Jackson. Okland herself may have used Travelocity's website to book the trips, but she did not pay any of the "Taxes and Fees" and "excessive room rates" that Appellants complain of in the original class action petition. Okland's injury is hypothetical or abstract.

Appellants argue that to establish a breach of contract, Okland need only show a valid contract and a breach because "at least nominal damages are then available." As Travelocity points out, however, the jurisdictional inquiry into standing is different from an inquiry into the merits of the claim. Standing focuses on the question of who may bring an action, and just as a court may

15

not delve into the merits of a claim when deciding whether standing exists, Appellants may not cloud the jurisdictional issue with merit-based arguments, evidence, or both. *See Novak*, 52 S.W.3d at 708; *Bland ISD*, 34 S.W.3d at 554; *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 654 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (stating that damages are a matter of proof and that consideration of damages goes beyond the jurisdictional inquiry and into the merits of the claim).

Appellants also argue that Okland has standing because she acted as an agent on behalf of an undisclosed principal. *See Perry v. Breland*, 16 S.W.3d 182, 187 (Tex. App.—Eastland 2000, pet. denied) (listing exceptions to rule that an agent may not maintain a suit in his own name based upon his principal's contract). Appellants contend that if Okland was acting for an "undisclosed principal" when she used Travelocity rather than for herself, then Travelocity was not aware of the identity of the "principal" until well after the litigation commenced, and Okland's contract with Travelocity is enforceable. We disagree for a few reasons.

Unlike the agent in *Perry*, who gave his own draft drawn on his own bank account, Okland did not personally pay for the bookings. *See id*. Also, the *Perry* court pointed out that "[a]n agent contracting for an undisclosed principal has the right to sue if it is apparent that the contract would be enforceable

16

against him if the opposite party sued." *Id*. Here, Okland Construction's failure to abide by its bargain with Travelocity would subject Okland Construction, not Okland, to possible liability because Okland Construction paid for the bookings. Additionally, Appellants do not identify who this "undisclosed principal" is. If the "undisclosed principal" is Okland Construction (there is no evidence to indicate that it is any other entity or person), then Appellants are arguing that Okland should be able to maintain her breach of contract claim in her own name based upon *Okland Construction's contract* with Travelocity. This position—that Okland Construction, not Okland, contracted with Travelocity—is clearly inconsistent with Appellants' other standing arguments above.

Appellants' argument in support of Okland's breach of contract claim includes any arguments made regarding Okland's other common law claims for conversion, imposition of a constructive trust, and money had and received. We hold that the trial court did not err by granting Travelocity's plea to the jurisdiction and motion to dismiss for want of subject matter jurisdiction on the ground that Okland lacks standing to pursue her common law claims against Travelocity. We overrule this part of Appellants' third issue.

### 3. Rogers's Standing and Appellants' First and Second Issues

In the remainder of their third issue, Appellants argue that Rogers has standing to assert DTPA and common law claims against Travelocity. Having

17

determined that the trial court did not err by granting Travelocity's motion to dismiss on the ground that Okland lacked standing to assert her statutory and common law claims, we hold that Okland lacked standing to amend her petition to add Rogers as a named plaintiff. *See Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) (holding "that where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint . . . by substituting new plaintiffs"); *Zangara v. Travelers Indem. Co. of Am.*, No. 1:05CV731, 2006 WL 825231, at *2–3 (N.D. Ohio Mar. 30, 2006) (holding that a plaintiff, stripped of standing to assert a claim against defendants, has no standing to amend the complaint to substitute a new plaintiff).

Additionally, when Travelocity filed its plea to the jurisdiction and motion to dismiss, Okland was the only named plaintiff who had also been named at the time suit was filed in January 2005 because Polapink nonsuited his claims against Travelocity in March 2006, Deaton nonsuited his claims in August 2006, Rogers did not join the lawsuit until April 2007, and Leffert and Malhotra were not identified as named plaintiffs until Appellants filed their third amended class action petition in August 2007. Having determined that the trial court properly granted Travelocity's plea to the jurisdiction on the ground that Okland lacked standing, no named plaintiff had standing to pursue his or her claims

18

against Travelocity at the time suit was filed. Because no named putative class representative had standing to pursue his or her claims against Travelocity at the time suit was filed, the trial court lacked subject matter jurisdiction to hear the case, including Rogers's subsequently filed claims.[11] *See Inman*, 252 S.W.3d at 307; *Novak*, 52 S.W.3d at 710; *Tex. Ass'n of Bus.*, 852 S.W.2d at 445; *see also Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 255–56 (Tex. 2002) (reasoning that regardless of when amended petitions and purported interventions were filed, trial court still had to consider named plaintiff's standing to bring suit before granting interventions); *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 703–04 (Tex. App.—Fort Worth 2006, pet. denied) (holding in part that because appellant lacked standing at the time suit was filed, the suit must be dismissed even if appellant later acquired an interest

---

[11] Appellants argue in their reply brief that subject matter jurisdiction "was established" when Rogers joined as a class representative. This is inconsistent with the fundamental requirement that standing, which is a component of subject matter jurisdiction, must exist at the time suit is filed. *See Novak*, 52 S.W.3d at 710 (holding that a *named plaintiff's* lack of individual standing *at the time suit is filed* deprives the court of subject matter jurisdiction over the plaintiff's individual claims and the claims on behalf of the class); *cf. County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) (stating that when a plaintiff fails to plead *facts* that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend). Okland was a named plaintiff at the time suit was filed; Rogers was not.

sufficient to support standing). We overrule the remainder of Appellants' third issue.

We resolve Appellants' first and second issues similarly. In their first issue, Appellants argue that the trial court abused its discretion by granting Travelocity's motion to strike Appellants' third amended class action petition. In their second issue, Appellants argue that the trial court abused its discretion by denying Leffert's and Malhotra's motion to intervene. As above, if Okland lacked standing to amend the petition to add Rogers as a named plaintiff, she also lacked standing to amend the petition to add Leffert and Malhotra as named plaintiffs. *See Summit Office Park, Inc.*, 639 F.2d at 1282; *Turner v. First Wis. Mortgage Trust*, 454 F. Supp. 899, 913 (E.D. Wis. 1978) (stating that "a third party cannot intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure in a class action suit to save a claim as to which the original plaintiff never had a claim[,] 'for the intervenors cannot possibly have a claim or defense in common with a plaintiff who never had a claim'" and that "a plaintiff who cannot maintain her own complaint has no right to amend . . . to bring in other parties who will thereafter remain as parties when the complaint is dismissed as to the original plaintiff"); *Zangara*, 2006 WL 825231, at *2–3.

Moreover, because no named putative class representative had standing to pursue his or her claims against Travelocity at the time suit was filed, the

trial court lacked subject matter jurisdiction to consider Appellants' intervention and amended pleading issues.  *See Novak*, 52 S.W.3d at 708; *Lawler*, 252 S.W.3d at 855 (stating that standing is determined at the time suit is filed); *see also Grizzle*, 96 S.W.3d at 256 (concluding that because Grizzle had no live individual claim, the trial court properly struck amended petitions that sought to add new class representatives).  We overrule Appellants' first and second issues.[12]

## IV.  CONCLUSION

Having overruled all of Appellants' issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE


PANEL:  LIVINGSTON, WALKER, and MEIER, JJ.

DELIVERED:  June 18, 2009

---

[12] Because we overrule Appellants' first and second issues on these grounds, we need not additionally consider whether the trial court abused its discretion under rules of civil procedure 63 and 60.  *See* Tex. R. App. P. 47.1.