Margaret LUKASIK, et al., Appellants,

v.

SAN ANTONIO BLUE HAVEN POOLS, INC., et al., Appellees.

No. 04–98–00603–CV.

Court of Appeals of Texas, San Antonio.

Feb. 9, 2000.

Daniel A. Bass, Law Office of Daniel A. Bass, Ronald B. Prince, Law Offices of Ronald B. Prince, P.C., San Antonio, for appellant.

Gail M. Deml, Joe Frazier Brown, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### PROCEDURAL BACKGROUND

Margaret Lukasik, Kenneth Lukasik, Christina Lukasik, and the estate of Jacob Lukasik (Lukasiks) filed suit against San Antonio Blue Haven Pools, Jody Carpenter, and Beto Garcia (Blue Haven defendants) alleging causes of action for wrongful death, negligence, gross negligence, and violations of the DTPA arising out of the drowning of Jacob Lukasik. The Blue Haven defendants filed a motion for summary judgment, which the trial court granted without stating reasons. The Lukasiks appeal. We affirm the trial court's grant of summary judgment.

### FACTUAL BACKGROUND

On April 24, 1995, Margaret Lukasik contracted with Blue Haven to construct a swimming pool in her backyard. Beto Garcia acted as the supervisor of pool construction. During construction, Margaret contacted Garcia and another Blue Haven employee, Jody Carpenter, regarding acquisition of a pool alarm. Carpenter informed Margaret that Blue Haven did not sell such alarms. The parties dispute whether Carpenter agreed to locate an alarm and install it or whether Carpenter just agreed to locate a supplier as a courtesy to Margaret. In any event, Carpenter was unsuccessful in locating an alarm for the pool. On July 12, 1995, the pool was completed, and Margaret accepted responsibility for it. On or about July 25, 1995, Kenneth and Christina Lukasik and their young children moved into a garage apartment behind Margaret's house and in close proximity to the pool. On August 1, 1995, Jacob Lukasik wandered out of the garage apartment, fell into the pool, and drowned.

The Lukasiks filed suit alleging that the Blue Haven defendants' failure to provide a pool alarm and misrepresentation regarding their ability to procure the alarm constituted violations of the DTPA, negligence, and gross negligence. The Lukasiks also allege the Blue Haven defendants were negligent by preventing them from erecting a fence between the garage apartment and the pool. Kenneth and Christina Lukasik also alleged a cause of action for wrongful death, and Christina and Margaret asserted a bystander claim.

### DISCUSSION

#### Standard of Review

In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). If the defendant, as movant, negates an essential element of the plaintiff's claim, the plaintiff must present evidence raising a fact issue precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). Evidence

favorable to the nonmovant is taken as true, and every reasonable inference in favor of the nonmovant will be resolved in its favor. *Nixon,* 690 S.W.2d at 548–49. When a trial court grants summary judgment without stating reasons, this court will review the summary judgment record and may affirm the summary judgment on any meritorious theory advanced below. *Casso v. Brand,* 776 S.W.2d 551, 553 (Tex. 1989).

### Analysis

In their first point of error, the Lukasiks contend the trial court erred by considering the affidavits of Jody Carpenter and Beto Garcia. The Lukasiks contend this summary judgment evidence was improper because it consisted solely of testimony of interested witnesses which was not clear, direct, and positive and because the affidavits were contradictory, internally inconsistent, and not otherwise credible and controvertible. The Lukasiks contend the affidavits contained self-serving legal conclusions regarding whether the two employees acted in their individual capacities or as employees of Blue Haven Pools.

■ Summary judgment may be based on the uncontroverted testimony of an interested or expert witness if the testimony is (1) clear, positive, and direct; (2) otherwise credible and free from contradictions and inconsistencies; and (3) susceptible of being readily controverted. Tex.R. Civ. P. 166a(c); Timothy Patton, Summary Judgments in Texas: Practice, Procedure and Review § 6.03[9][a], [b], at 79–83 (1995). Whether testimony satisfies this rule and is sufficient to support summary judgment is decided on a case-by-case basis. Patton, § 6.03[9][a], at 80. The phrase "susceptible of being readily controverted"means "the testimony at issue is of a nature which can be effectively countered by opposing evidence." *Casso,* 776 S.W.2d at 558 n. 5. Self-serving statements of interested parties testifying as to what they knew or intended are not readily controvertible and will not support sum-

mary judgment because "the mental workings of an individual's mind are matters about which adversaries have no knowledge or ready means of confirming or controverting." *Hayes v. E.T.S. Enterprises, Inc.,* 809 S.W.2d 652, 657 (Tex.App.-Amarillo 1991, writ denied); *Patton,* § 6.03[9][b], at 82. However, if the affidavits of interested witnesses are detailed and specific, those affidavits may be objective proof sufficient to establish the affiant's state of mind as a matter of law. *Channel 4, KGBT v. Briggs,* 759 S.W.2d 939, 942 (Tex.1988).

■ The declarations on which the Lukasiks focus their argument include statements by both Carpenter and Garcia that they acted as employees of Blue Haven in their dealings with Margaret and that they never acted in their personal or individual capacities. The Lukasiks also contend Carpenter's affidavit is internally inconsistent because he states, "I did contact a *few* suppliers, but they did not have an alarm," and later states, "I told Mrs. Lukasik that Blue Haven did not supply alarms and that I could not find one through *any other* supplier in town." The Lukasiks also contend Garcia's affidavit was inconsistent because Garcia first states, "I did not have any discussions with Margaret Lukasik or her children regarding a fence between the pool and garage apartment, and I did not prevent Margaret Lukasik from building a fence between her garage apartment and the pool." The Lukasiks contend Garcia then implies that he did converse with the Lukasiks regarding construction of a fence because he goes on to state that Blue Haven needed some "sort of access to the worksite, but there was no problem with access to the Lukasik worksite," and ". . . the pool was released to Margaret Lukasik on July 12, 1995. After such date, Margaret Lukasik could have built a new fence anywhere on her property if she so desired."

The Lukasiks argue that Carpenter's and Garcia's affidavits contained improper legal conclusions as to their capacity to be

sued as individuals, and this legal conclusion, alone, was inadequate to establish the scope of their authority.[1] To substantiate Carpenter's and Garcia's statements that they only acted as employees, the Lukasiks contend Blue Haven should have tendered some evidence that it authorized these individuals to search for a pool alarm, even though it was not in the business of pool alarms. The Lukasiks argue that, because Blue Haven did not provide or sell pool alarms, it did not authorize Carpenter or Garcia to attempt to locate one, and therefore, the two men acted in their individual capacity in so doing.

The statements in Carpenter's and Garcia's affidavits are not improper legal conclusions regarding their legal capacity, but show that there was no factual basis to hold them personally liable. These statements provide factual support to show Carpenter and Garcia acted in the course and scope of their employment at the time they committed the conduct forming the basis of the lawsuit. The Lukasiks attempt to transform Carpenter's and Garcia's affidavits into self-serving statements regarding their intentions or mental processes. The statements in the affidavits are not statements of intention or mental process, but are statements regarding Carpenter's and Garcia's actions and statements to Margaret. The Lukasiks could have effectively countered these statements with competent summary judgment evidence, but failed to do so.

The affidavits are not internally inconsistent. Whether Carpenter contacted a few suppliers or all suppliers in the city is immaterial to the substance of the lawsuit and does not transform the affidavit into incompetent summary judgment evidence. Any argument that the statements in Gar-

cia's affidavit are inconsistent is contrived. Accordingly, this argument must fail.

The affidavits otherwise comply with Rule 166a(c). Because Carpenter's and Garcia's affidavits satisfied Rule 166a(c), the trial court properly considered them. The Lukasiks' first point of error is overruled.

In their second point of error, the Lukasiks contend the trial court erred by granting summary judgment on their DTPA and negligence causes of action because the Blue Haven defendants failed to negate one or more elements of the causes of action and because their response to the motion for summary judgment raised a genuine issue of material fact on all elements. The Lukasiks raise several contentions particular to each specific cause of action under this one general point of error. We will address these contentions by separating the causes of action, and, then, by discussing the application of relevant case law to each party.

### *DTPA cause of action* :

■■■ The DTPA protects a consumer from "false, misleading, or deceptive acts or practices, from an "unconscionable action or course of action by any person," and from the breach of an implied or express warranty in the conduct of any trade or commerce that is the producing cause of actual damage. Tex. Bus. & Com.Code Ann. §§ 17.46(a), 17.50(a)(1), (2), (3)(Vernon 1987 & Vernon Supp.1999). To have standing to pursue a DTPA cause of action, a plaintiff must be a consumer. *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983). Therefore, consumer status is an essential element of a DTPA cause of action. *Mendoza v. American Nat'l Ins. Co.,* 932 S.W.2d 605, 608 (Tex.App.-San Antonio 1996, no

---

**1.** The Blue Haven defendants argue that the Lukasiks waived error based on the argument that the affidavits contain improper legal conclusions because they failed to object to the evidence in the trial court. Objections to defects in the form of an affidavit may be waived by failure to object, while objections to defects in the substance of affidavits may

be raised for the first time on appeal. *See Ramirez v. Transcontinental Ins. Co.,* 881 S.W.2d 818, 829 (Tex.App.-Houston [14th Dist.] 1994, writ denied). An objection to an affidavit on the ground it states a legal conclusion relates to a defect in substance, not to the form, and, therefore, the argument may be raised for the first time on appeal. *Id.*

writ). The question of consumer status under the DTPA is question of law for the court to decide, unless there is a dispute concerning factual issues that create consumer status. *Id.* A jury must resolve any of these underlying factual issues, but the trial court still must decide the legal effect of resolved issues. *Id.; Luker v. Arnold,* 843 S.W.2d 108, (Tex.App.-Fort Worth 1992, no writ). To qualify as a consumer, the plaintiff must meet two requirements: (1) the person must seek or acquire goods or services by purchase or lease; (2) the goods or services purchased or leased must form the basis of the complaint. *Mendoza,* 932 S.W.2d at 608. A plaintiff's standing as a consumer is established by his relationship to the transaction, not by a contractual relationship with the defendant. *Id.* Consequently, a person need not be a direct purchaser to satisfy the requirement that he "seek or acquire goods or services by purchase or lease." *Kennedy v. Sale,* 689 S.W.2d 890, 892–93 (Tex. 1985); *Flenniken,* 661 S.W.2d at 707. Therefore, in very limited situations, a third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party. *See e.g., Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 815 (Tex.1997)(purchasing corporation is a consumer and may sue accounting firm in connection with firm's preparation of financial statements of acquired corporation done with express intent to facilitate purchase); *Kennedy,* 689 S.W.2d at 892–93 (employee is a consumer of medical insurance purchased by employer for employee's benefit); *see also Wellborn v. Sears, Roebuck & Co.,* 970 F.2d 1420, (5th Cir.1992)(son of woman who bought garage door opener was a consumer because primary purpose of the purchase and installation into home was to benefit son and was used by son). A representative of an estate is not a "consumer" under the DTPA because a DTPA cause of action does not survive the death of the original consumer. *Mendoza,* 932 S.W.2d at 608; *see also First Nat'l Bank of Kerrville v. Hackworth,* 673 S.W.2d 218, 220–21 (Tex.App.-San Antonio 1984, no writ)(en banc).

■ With regard to Kenneth and Christina Lukasik, as individuals, the summary judgment evidence conclusively shows they are not "consumers" as defined by the DTPA. The Blue Haven defendants' summary judgment evidence showed they conversed only with Margaret regarding the pool alarm. In response, the Lukasiks' summary judgment evidence established that Kenneth and Christina never sought to acquire the pool alarm that forms the basis of their DTPA claim. Kenneth and Christina did not reside on the property until two weeks after the pool's completion, and they admittedly did not independently pursue acquisition of a pool alarm from the Blue Haven defendants. In their affidavits, both Kenneth and Christina attest they only requested that Margaret call Blue Haven Pools to inquire about the status of getting a pool alarm *after* they moved onto her property. Because Kenneth and Christina did not independently act to purchase the pool alarm from the Blue Haven defendants, they are not consumers under the DTPA. *See Plumley v. Landmark Chevrolet, Inc.,* 122 F.3d 308, (5th Cir.1997)(applying Texas law; individual who attempts to help son purchase a truck and who contributes to purchase and acts as cosigner is not a consumer). Therefore, the summary judgment evidence established that these two parties, as individuals, were not "consumers" under the DTPA and have no standing to pursue such cause of action.

■ Kenneth and Christina cannot assert a DTPA cause of action as third-party beneficiaries of any transaction of Margaret's, nor can they claim they are in privity to the contract, because the summary judgment evidence conclusively shows that any transaction to acquire a pool alarm was not specifically required by or intend-

ed to benefit them, specifically and directly. *See Arthur Andersen & Co.*, 945 S.W.2d at 815; *Kennedy*, 689 S.W.2d at 892–93; *Wellborn*, 970 F.2d at 1426. In this case, unlike in *Arthur Andersen* and *Wellborn*, the summary judgment evidence shows that Kenneth and Christina did not seek to acquire or purchase a pool alarm from the Blue Haven defendants, nor did Margaret seek to purchase a pool alarm with the intent to benefit them directly. The summary judgment evidence establishes that Kenneth and Christina requested that Margaret acquire a pool alarm after Carpenter had agreed to search for one. Kenneth, Christina, and their children did not live on the premises at the time Margaret Lukasik inquired about the pool alarm or even at the time Margaret accepted responsibility for the pool; therefore, any transaction was not intended for their direct benefit. Margaret did not request the pool alarm to benefit Kenneth, Christina, or Jacob, specifically. Neither Kenneth or Christina Lukasik had a relationship to the transaction nor were they more than incidental beneficiaries of any pursuit of the pool alarm. Kenneth and Christina are therefore not "consumers" under the DTPA and lack standing to assert a DTPA cause of action as a matter of law.

█ As representatives of the estate of Jacob Lukasik, Kenneth and Christina do not have standing to sue under the DTPA because any cause of action Jacob could have pursued did not survive his death. *See Mendoza*, 932 S.W.2d at 608; *First Nat'l Bank of Kerrville*, 673 S.W.2d at 220–21.[2] The Lukasiks contend this court should overrule *Mendoza* and follow *Thomes v. Porter*, 761 S.W.2d 592, 593–94 (Tex.App.-Fort Worth 1988, no writ), in which the Fort Worth Court of Appeals allowed recovery under the DTPA for statutory damages and damages for claims other than personal injuries. *Id.* This

court rejected *Thomes* and its reasoning in *Mendoza*. *See Mendoza*, 932 S.W.2d at 609 n. 4. We find no compelling reason to now overrule *Mendoza*.

█ With regard to Margaret Lukasik, the summary judgment evidence shows that she does not have standing to pursue a DTPA cause of action also because she is not a consumer. The first prong of the definition of "consumer" requires that the plaintiff seek or acquire goods or services through purchase or lease. *See*. The facts in this case present a critical and unsettled question: whether the exchange of consideration is necessary to comprise a "purchase" under this prong. *See e.g. Martin v. Lou Poliquin Ent., Inc.*, 696 S.W.2d 180, 183–85 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612, (Tex.App.-Corpus Christi 1985, no writ)(both concluding that exchange of consideration is not necessity for DTPA-consumer status); *but see Hall v. Bean*, 582 S.W.2d 263, 265 (Tex.Civ.App.-Beaumont 1979, no writ)(gratuitous service is not a "purchase" under the DTPA); *Exxon Corp. v. Dunn*, 581 S.W.2d 500, 501 (Tex.Civ.App.-Dallas 1979, no writ)(automobile owner who was not charged for unsuccessful repair services was not a consumer because he did not purchase services). However, this court need not answer this question because, even if we determined that consideration is not necessary to establish consumer status, a "consumer" under the DTPA must at least have a good faith intent and the capacity to purchase the good or service from the party sued, and the evidence must show an agreement to do so. *See Martin*, 696 S.W.2d at 184–85. This is where the facts in this case collapse.

The undisputed summary judgment evidence shows that Margaret asked Carpenter if she could buy a pool alarm from Blue Haven, and Carpenter responded to her

**2.** The Fifth Circuit certified this question to the Texas Supreme Court in *Wellborn v. Sears, Roebuck, and Co.*, 970 F.2d at 1426. However-

er, the Supreme Court failed to answer the question prior to the parties settling the dispute.

that Blue Haven did not sell pool alarms. Carpenter then agreed to call other suppliers to see if he could find a pool alarm for Margaret. The undisputed summary judgment evidence shows that the parties did not enter into any agreement or understanding as to a price of the pool alarm, how it would be purchased or paid for, or whether Margaret would pay Blue Haven or the supplier. *See id.* (parties must execute written agreement and evidence must show intent, action, and capacity to purchase). Margaret presented summary judgment evidence of her deposition in which she stated that she "had every intention of paying for [the pool alarm]." However, this evidence does not establish that she intended to pay Blue Haven, or that any agreement had been reached for the exchange of consideration, or that she took any action or had the capacity to purchase the alarm. Any argument that Margaret sought to purchase a service from the Blue Haven defendants, that of locating a pool alarm, must fail for the same reason.

 To the extent Margaret argues that she is a consumer because she purchased a pool from the Blue Haven defendants, this argument fails because Margaret does not assert a DTPA complaint with regard to the pool purchase. Margaret's cause of action is based on the Blue Haven defendants' failure to deliver and install a pool alarm. Margaret's purchase of the pool cannot make her a consumer with respect to the pool alarm. *See Mendoza,* 932 S.W.2d at 608 (goods or services purchased must form the basis of the complaint); *see also Rutherford v. Whataburger, Inc.,* 601 S.W.2d 441, 444 (Tex.App.-Dallas 1980), *writ ref'd n.r.e.,* 642 S.W.2d 30 (plaintiff must seek or acquire goods upon which his complaint is based). Therefore, Margaret is not a "consumer" under the DTPA and lacks standing to assert a DTPA cause of action.

The Blue Haven defendants' summary judgment evidence negates the element of consumer status necessary to bring a DTPA cause of action, and the Lukasiks' summary judgment evidence does not raise a fact issue as to their consumer status. Because the summary judgment evidence establishes that Kenneth, Christina, and Margaret are not consumers under the DTPA as a matter of law, the trial court did not err by granting summary judgment as to their DTPA cause of action.

### Negligence cause of action :

 Negligence consists of three essential elements: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately resulting from that breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). To defeat a claim of negligence by summary judgment, a defendant must disprove at least one of these essential elements as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others. *El Chico Corp.,* 732 S.W.2d at 311. In determining whether a duty exists, we consider the risk, foreseeability, and likelihood of injury, and weigh these factors against the social utility of the actor's conduct, the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994). Foremost and dominant among these considerations is foreseeability of the risk. *El Chico Corp.,* 732 S.W.2d at 311; *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983). "In the absence of foreseeability, there is no duty." *NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 954 (Tex.1996). The test for foreseeability is what a person should, under the circumstances, reasonably anticipate as the consequences of one's action or failure to act. *See Allright San Antonio Parking, Inc. v. Kendrick,* 981 S.W.2d 250, (Tex. App.-San Antonio 1998, no writ); *Rodriguez v. Spencer,* 902 S.W.2d 37, 41 (Tex. App.-Houston [1st Dist.] 1995, no writ). Foreseeability does not require the actor

to anticipate the specific incident or precise manner of injury, but only requires that he reasonably anticipate the general character of the injury. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992); *Bird*, 868 S.W.2d at 769.

■ The Lukasiks' contentions related to their negligence claims are all dispelled as a matter of law because the summary judgment evidence shows that the Blue Haven defendants owed them no duty. The Blue Haven defendants' summary judgment evidence shows that their conduct could not have foreseeably created the risk of injury to Jacob or the Lukasiks. Kenneth, Christina, and Jacob did not live on the property at the time construction was completed and Margaret accepted responsibility for the pool. At the time the pool was completed, Margaret signed a statement acknowledging that she received all "pool accessories and cleaning equipment" required under the contract. While a person of ordinary intelligence would anticipate that an unprotected pool poses a risk of injury to toddlers, it was unforeseeable to the Blue Haven defendants that any failure to procure a pool alarm for the Lukasiks would create a danger of injury to Jacob or the remaining plaintiffs. The Blue Haven defendants undertook no responsibility to make the pool safe from drowning incidents to all future visitors to Margaret's home, and such imposition of responsibility would create devastating social and economic consequences. The Lukasiks' summary judgment evidence did not raise a fact issue as to foreseeability, as it confirmed that no agreement was reached regarding the Blue Haven defendants' commitment to procure a pool alarm, and the evidence did not show that the Blue Haven defendants could have anticipated any injury under these facts.

■ The trial court did not err by awarding summary judgment on the Lukasiks' negligence cause of action based upon the Blue Haven defendants' failure to allow them to erect a fence between the garage apartment and the pool. The summary judgment evidence showed the Blue Haven defendants did not prevent the erection of a fence during their construction of the pool. While the Lukasiks' summary judgment evidence disputed this fact through an affidavit submitted by Margaret, the Lukasiks' evidence does not show that the Blue Haven defendants prevented its placement during the two weeks following the pool's completion and Margaret's acceptance of it and Jacob's death. The Blue Haven defendants held no duty to the Lukasiks following the pool's completion. Any injury resulting from the Lukasiks' failure to erect a fence after the pool's completion was not foreseeable to the Blue Haven defendants.

The Lukasiks' arguments amount to nothing more than a theorization on an extraordinary sequence of events to retrospectively impose liability on the defendants. We conclude that the summary judgment evidence establishes that the Blue Haven defendants could not reasonably foresee that any failure to find a pool alarm for Margaret or any prevention of the placement of a fence during pool construction would create the dangerous condition to Jacob, and the Lukasiks' summary judgment proof fails to raise a fact issue concerning foreseeability under either theory. We therefore conclude that the Blue Haven defendants did not owe a duty to the Lukasiks under either theory, and the trial court did not err by awarding summary judgment on the Lukasiks' negligence causes of action.

■ For the same reasons summary judgment was proper for the negligence causes of action, it was also proper for any cause of action for gross negligence. *See Ford Motor Co. v. Miles*, 967 S.W.2d 377, 390 (Tex.1998); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994). The Lukasiks cannot assert a cause of action for wrongful death because they cannot show that the Blue Haven defendants' conduct caused Jacob's death. *See* Tex. Civ. Prac. & Rem.Code Ann.

§ 71.002 (Vernon 1997). The Lukasiks cannot assert any bystander claims for mental anguish damages as a matter of law because a prerequisite to such claims is a finding that the defendant negligently inflicted injuries on the primary victim. *See Lehmann v. Wieghat*, 917 S.W.2d 379, 381–82 (Tex.App.-Houston [14th Dist.] 1996, writ denied). The trial court did not err by granting summary judgment on the Lukasiks' causes of action for gross negligence, wrongful death, and bystander claims for mental anguish.

The Lukasiks' second point of error is overruled.

In their third point of error, the Lukasiks assert that the Blue Haven defendants failed to establish sufficient summary judgment evidence to support their affirmative defense of tolling of the statute of limitations. We need not discuss this point of error.

The trial court's summary judgment is affirmed.