Opinion filed August 7, 2008











 
 
  
 
 







 
 
  
 
 




 Opinion filed August 7,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00008-CV 

                                                     __________

 

              SERVICE
CORPORATION INTERNATIONAL; SCI, TEXAS 

 FUNERAL SERVICES, INC.
D/B/A SUNSET MEMORIAL GARDENS; AND SUNSET MEMORIAL GARDENS & FUNERAL HOME,
Appellants

 

                                                             V.

 

                 ESTELA
ARAGON, INDIVIDUALLY AND ON BEHALF 

         OF HER MINOR SON,
CHRISTIAN ARAGON; ERICA ARAGON;

          REBECCA ARAGON
RIZO; AND STEPHEN ARAGON, Appellees

 



 

                                         On
Appeal from the 358th District Court 

 

                                                           Ector
County, Texas

 

                                                Trial
Court Cause No. D-116,613

 



 

                                                                   O
P I N I O N








Estela
Aragon, individually and on behalf of her minor son Christian Aragon, and Erica
Aragon, Rebecca Aragon Rizo, and Stephen Aragon filed suit against Service
Corporation International; SCI, Texas Funeral Services, Inc. d/b/a Sunset
Memorial Gardens; and Sunset Memorial Gardens and Funeral Home (SCI
collectively).  Plaintiffs alleged that defendants improperly buried Osbaldo AObie@ Aragon, Estela=s
husband and the remaining plaintiffs=
father, by burying him in the wrong plot and then moving his body without
Estela=s consent.  The
jury found that SCI violated the Deceptive Trade Practices-Consumer Protection
Act (DTPA)[1] and that each
plaintiff suffered mental anguish damages.  The jury awarded Estela mental
anguish damages of $275,000, Christian $150,000, Erica and Rebecca $80,000
each, and Stephen $3,000.  The jury also awarded each plaintiff additional
damages.  The amounts awarded exceeded the DTPA=s
damage cap,[2] and the trial
court reduced the awards to twice the individual plaintiff=s actual damages and
rendered judgment accordingly.  We affirm in part and reverse and render in
part.

I.
Background Facts

Obie
was diagnosed with colon cancer in 2000.  He succumbed to his illness on April
11, 2003.  Estela decided to bury him in Sunset Memorial Gardens, and she
purchased the interment rights for Plots 218-1 and 218-2.  The funeral was held
on April 14, 2003.  When the family arrived at the cemetery for the graveside
service, Estela and Rebecca noticed that the wrong plot had been opened, but
neither attempted to stop the service nor complained to SCI.  Estela and other
family members visited Obie=s
grave site in the days following the funeral.  His flowers and temporary marker
were at Plot 202-2 where he had been buried.

Unfortunately, Plots 202-1 and 202-2 had been previously
sold to Billie Marie Curtis.  She died in May 2003 and was buried in Plot 202-2
on May 17.  Estela visited the cemetery on May 19 and noticed an awning, new
flowers, and a temporary marker with Curtis=s
name on Plot 202-2.  Obie=s
tombstone was at Plot 218-1.  Estela met with the cemetery manager, David
Barrientes.  He reviewed the cemetery=s
paperwork and advised her that Obie had been properly buried in Plot 218-1.  He
offered to disinter Obie=s
body to confirm this.  After suit was filed, Plot 218-1 was opened, and Obie=s remains were identified.

II. Issues on Appeal








SCI
challenges the judgment with twenty-four issues.  SCI contends that Christian,
Rebecca, Erica, and Stephen are not consumers; that the evidence is
insufficient to support several of the jury=s
findings; that SCI made no false, misleading, or deceptive statements as a
matter of law; that the jury charge impermissibly failed to include a reliance
question for each of the plaintiffs; that SCI did not engage in an intentional
or unconscionable course of action as a matter of law; and that the trial court
erred by allowing plaintiffs=
expert to testify.

                                                                     III. 
Analysis

A.
Are Christian, Rebecca, Erica, and Stephen Consumers as Defined by the DTPA?


SCI
argues that only Estela sought goods or services and was the only consumer. 
SCI notes that Estela was the only plaintiff who signed any agreement with SCI
and was the person who purchased and paid for Plots 218-1 and 218-2; that
Christian was only twelve years old at the time and that he and Stephen had not
been to the cemetery prior to the funeral service; that Stephen left Odessa
after the service; and that, while Rebecca was present when Plots 218-1 and
218-2 were purchased, she was not a party to any transaction with SCI.  SCI
also points out that, after suit was filed, it moved for arbitration citing an
arbitration provision in the agreement for perpetual care.  Plaintiffs argued
that Christian, Erica, Rebecca, and Stephen had not signed the agreement and,
therefore, were not subject to the arbitration provision.[3]

Only
a Aconsumer@ has standing to sue under
the DTPA.  See Section 17.50.  The DTPA defines consumer as one Awho seeks or acquires by
purchase or lease, any goods or services.@ 
Section 17.45(4).  A plaintiff need not establish privity of contract to
be a consumer.  Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex.
1996).  Instead, a plaintiff=s
standing as a consumer is established by her relationship to the transaction.  Lukasik
v. San Antonio Blue Haven Pools, Inc., 21 S.W.3d 394, 401 (Tex. App.CSan Antonio 2000, no
pet.).  A third-party beneficiary may qualify as a consumer as long as the
transaction was specifically required by or intended to benefit the third party
and the good or service was rendered to benefit the third party.  Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 815 (Tex. 1997).








When
determining whether a third-party beneficiary qualifies as a consumer, courts
have considered whether the third party was the primary intended beneficiary or
if it derived only an incidental benefit.  For example, in Kennedy v. Sale,
689 S.W.2d 890, 892 (Tex. 1985), employees were the primary intended
beneficiary of an insurance policy purchased by their employer and, therefore,
were consumers.  Conversely, in Vinson & Elkins v. Moran, 946 S.W.2d
381, 408 (Tex. App.CHouston
[14th Dist.] 1997, writ dism=d
by agr.) (will beneficiaries injured by estate counsel=s legal malpractice), and Brandon v.
American Sterilizer Co., 880 S.W.2d 488, 492 (Tex. App.CAustin 1994, no writ)
(hospital employee injured by defectively repaired gas sterilizer), the third
parties were only incidental beneficiaries and, therefore, were not consumers.

No
Texas decision directly addresses who the intended beneficiaries are when a
cemetery plot or funeral services are purchased, but Texas courts have allowed
immediate family members to bring common-law actions for mishandling a corpse. 
See, e.g., Clark v. Smith, 494 S.W.2d 192 (Tex. Civ. App.CDallas 1973, writ ref=d n.r.e.).  In this case, a
son contracted with the defendant to take his mother=s body from a hospital to the defendant=s place of business and to
maintain the body in suitable condition for decent burial.  The defendant took
possession of the decedent=s
body but allowed it to decompose.  Id. at 194-95.  The jury awarded
mental anguish damages to each of the decedent=s
four children.  The court suggested a remittitur but affirmed their right to
recover.  Id. at 198.  Thus, even though only one of the decedent=s children dealt with the
defendant, because each was allowed to recover, the defendant=s duty ran to all four.  If
a company taking possession of a body has a duty to the decedent=s children, it is
reasonable to conclude as the trial court did that SCI=s interment services were intended for the
benefit of Obie=s
immediate family and that each was a consumer.  Issue No. One is overruled.

B. 
Sufficiency of the Evidence. 

SCI
complains of a number of the jury=s
findings, contending that they are supported by legally or, alternatively,
factually insufficient evidence.

1.  Standard of Review.           








When
conducting a legal sufficiency review, we consider all of the evidence in the
light most favorable to the verdict, crediting any favorable evidence if a
reasonable factfinder could and disregarding any contrary evidence unless a
reasonable factfinder could not.  City of Keller v. Wilson, 168 S.W.3d
802, 821-22 (Tex. 2005).  When conducting a factual sufficiency review, we
consider all of the evidence and uphold the jury=s
finding unless the evidence is too weak to support it or the finding is so
against the overwhelming weight of the evidence as to be manifestly unjust.  Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

2.  Was Obie Incorrectly Buried and Subsequently Moved?

The
jury found that Obie was originally interred in Plot 202-2 and was then moved
to Plot 218-1 without Estela=s
consent.  SCI contends that both findings are supported by legally or factually
insufficient evidence.  We disagree.

Estela
testified that she wanted a plot near the road and close to a tree.  She
purchased the interment rights for Plots 218-1 and 218-2.  Estela testified
that, when she arrived at the cemetery for the funeral, she noticed that her
husband was being buried in Plot 202-2.  Estela=s
testimony was confirmed by family members, friends, a funeral home employee,
and the minister who performed the funeral service.  SCI=s employees disputed this testimony,
contending that Obie was correctly buried in Plot 218-1.  When the parties
offer conflicting testimony, the jury has the exclusive responsibility to
determine the credibility of the witnesses and the weight to be given their
testimony.  Novosad v. Mid-Century Ins. Co., 881 S.W.2d 546, 548 (Tex.
App.CSan Antonio 1994,
no writ).  The jury had sufficient evidence to resolve this conflicting
evidence in plaintiffs=
favor.

It
is undisputed that Obie=s
body was in Plot 218-1 at the time of trial.  SCI denied moving Obie=s body.  However,
plaintiffs presented evidence that a body cannot be accidentally disinterred
and moved to a new location and that this could not happen without SCI=s knowledge.  The cemetery=s former general manager
testified that, if a body was moved, it would have been done by a cemetery
employee.  The jury had sufficient evidence to conclude that Obie=s body was moved from Plot
202-2 to Plot 218-1 and that it was moved by SCI.  Issue Nos. Two, Three, Four,
and Five are overruled.

3.  Did SCI
Engage in Any Unconscionable Action, Course of Action or Intentional Conduct?

 








SCI
contends that there is legally or factually insufficient evidence to support
the jury=s findings
that it engaged in an unconscionable action or course of action or that it
acted intentionally. The DTPA allows a consumer to recover actual damages for
any unconscionable action or course of action that is the producing cause of
damage.  Section 17.50(a)(3).  AUnconscionable
action or course of action@
is defined as Aan act
or practice which . . . takes advantage of the lack of knowledge, ability,
experience, or capacity of the consumer to a grossly unfair degree.@  Section 17.45(5).  The
defendant=s intent is
irrelevant because unconscionability is an objective standard.  Ins. Co. of
N. Am. v. Morris, 981 S.W.2d 667, 677 (Tex. 1998).  To prove an
unconscionable action or course of action, a plaintiff must show that the
defendant took advantage of her lack of knowledge and that the resulting
unfairness was glaringly noticeable, flagrant, complete, and unmitigated.  Bradford
v. Vento, 48 S.W.3d 749, 760 (Tex. 2001).

SCI
argues that the relevant inquiry must consider and be limited to the time of
the transaction and contends that there is no evidence of an unconscionable
action on April 12 when Estela purchased interment rights for herself and
Obie.  SCI defines the transaction too narrowly.  In Houston Livestock Show
and Rodeo, Inc. v. Hamrick, 125 S.W.3d 555, 576 (Tex. App.CAustin 2003, no pet.), the
court held that a transaction was not completed when the plaintiffs paid their
entry fee, but necessarily included the host of services plaintiffs purchased. 
In this instance, Estela and SCI entered into a purchase agreement and a
perpetual care agreement.  These agreements obligated SCI to provide burial
services the day of Obie=s
funeral and to perpetually maintain that plot thereafter.

We
have found that sufficient evidence supports the jury=s findings that Obie was buried in Plot 202-2
and was later moved by SCI to Plot 218-1.  SCI points out that there was no
evidence that its employees intentionally opened the wrong space.  We agree. 
It is reasonable to assume that the initial interment in Plot 202-2 was an
innocent mistake.  However, at some point between Obie=s burial on April 14 and Curtis=s burial on May 17, his
body was moved without the family=s
permission.  This would not have occurred accidently but only as the result of
an intentional act and only with SCI=s
knowledge.

In
Hines v. Evergreen Cemetery Ass=n,
865 S.W.2d 266, 269 (Tex. App.CTexarkana
1993, no writ), the court wrote:  AOne
does not purchase a burial plot with the expectation that the cemetery association
will surreptitiously move the body from place to place without permission of
the family.@ The
evidence is legally and factually sufficient to establish that SCI committed an
unconscionable act or course of action and that it acted intentionally.  Issue
Nos. Twelve through Sixteen are overruled.  This holding makes it unnecessary
to address SCI=s Issue
Nos. Six through Eleven.

4. 
Past and Future Mental Anguish.








The
jury awarded each plaintiff past mental anguish damages, and it awarded Estela
and Christian future mental anguish damages.  SCI argues that plaintiffs= complaints are not
compensable as mental anguish damages as a matter of law, that the evidence is
legally insufficient to support the jury=s
awards, or, alternatively, that the evidence is factually insufficient.

Mental
anguish requires more than mere worry, anxiety, vexation, embarrassment, or
anger.  Instead, a plaintiff must show a high degree of mental pain and
distress.  Latham v. Castillo, 972 S.W.2d 66, 70 (Tex. 1998).  This
requires evidence of the nature, duration, and severity of the mental anguish
and a substantial disruption in the claimant=s
daily routine.  Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d
607, 614 (Tex. 1996).  There must also be evidence to justify the amount
awarded.  Id.  Mental anguish damages cannot be determined with
mathematical precision but only through the exercise of sound judgment.  Bentley
v. Bunton, 94 S.W.3d 561, 605 (Tex. 2002).  Even so, the jury cannot simply
pick a number and put it in the blank but must award fair and reasonable
compensation based upon the evidence. Saenz, 925 S.W.2d at 614.

In
Bentley, the court held that plaintiff=s
testimony that he had lost sleep, been embarrassed in the community, his family
disrupted, and his children distressed at school, coupled with evidence from
his friends that he was depressed, that his honor and integrity had been
impugned, and that his family had suffered left no doubt that he had suffered
mental anguish.  94 S.W.3d at 606-07.  In Fifth Club, Inc. v. Ramirez,
196 S.W.3d 788, 797-98 (Tex. 2006), the court held that plaintiff=s testimony that he was
depressed, humiliated, noncommunicative, unable to sleep, angry, and suffered
from headaches and nightmares and that his daily activities and family
relationships were detrimentally affected was legally sufficient evidence of
mental anguish.

Conversely,
in Parkway Co. v. Woodruff, 901 S.W.2d 434, 445 (Tex. 1995), plaintiff=s testimony that he was hot
and disturbed, that his lifestyle had been changed, that the situation was
unpleasant and upsetting, and that it caused friction within the family was
insufficient evidence of mental anguish because it amounted to mere expressions
of anger, frustration, or vexation and, thus, was evidence of mere emotions. 
Similarly, in Saenz, statements that the plaintiff was worried about
losing his home and that he could not afford his medical bills failed to
establish more than emotional disturbances and, thus, failed to establish
mental anguish.  925 S.W.2d at 614.  Finally, we note that in Gunn Infinity,
Inc. v. O=Byrne,
996 S.W.2d 854, 860 (Tex. 1999), the court held that a plaintiff=s bare testimony that he
suffered mental anguish is no evidence of mental anguish.








Utilizing
these cases as guidelines, there is legally and factually sufficient evidence
that Estela and Christian suffered past mental anguish, that they would suffer
future mental anguish, and that Rebecca suffered past mental anguish.[4] 
The evidence is legally insufficient to establish that Erica or Stephen
suffered past mental anguish.

Estela
testified that she panicked when she saw another woman=s marker on Obie=s
grave site and saw that his headstone had been placed on Plot 218-1.  She
subsequently felt devastated, terrified and nauseated and had trouble sleeping
and functioning at work.  She started losing clients, got migraines, and began
taking prescription sleep medication.  Her doctor referred her to a counselor
who diagnosed her with depression, was still treating her at the time of trial,
and had recommended that she see a psychiatrist to have antidepressant
medication prescribed.  Friends and family members testified that Estela cried
frequently and was distraught, depressed, and withdrawn.  SCI points out that
Estela=s medical
records indicate some preexisting problems, that she had complained of stress
to her doctor as early as 2001, that her medical records after the funeral were
absent any complaints of stress or tearfulness for three years, and that at the
time of trial Estela was not on any antidepressant or antianxiety medication.

Christian
testified that he was not doing well at school or on the cross-country team and
that he had lost sleep, felt sad, and was unable to interact with his friends
the same now.  He testified that he thinks about this incident every day. 
Estela testified that Christian was terrified and had difficulty sleeping;
that, even though he was sixteen years old, he did not want to leave her side
because of fear and anxiety; that his grades had suffered; and that he had
become introverted.  SCI points out that Christian had not seen a counselor or
other healthcare provider.   

Rebecca
testified that she was perplexed and wondered what had happened to her father
and that she felt lost and panicked.  She testified that she thought about this
every day during her commute; that she cried in the morning and afternoon; that
it has interfered with her work, home life, and health; that she has lost
sleep; that she was depressed; and that she would wake up panicked. Rebecca
agreed that she had not seen a therapist, psychiatrist, or psychologist; that she
had remained gainfully employed; and that, although a doctor had given her
samples of sleeping pills and antidepressants, she did not take them.








Stephen
testified that this incident had been hard on him and that he did not like
coming to Odessa.  He also testified that his school work had been affected
because he did not feel comfortable and could not focus.  Stephen had not
sought counseling or medical help.  Erica testified that she was scared and
confused, that she quit working at Barnes & Noble shortly after the funeral
because she did not want to talk to customers, and that her grades had
suffered.  She went to work at Starbucks after quitting Barnes & Noble but
was subsequently fired and blamed it on the emotional impact of this incident. 
Neither Stephen nor Erica offered any testimony that they had seen a therapist
or healthcare provider because of this incident or that they had taken any type
of medication.  

Each
of the witnesses established that this incident had caused some emotional
impact and some disruption in their daily lives.  We realize that there was
conflicting evidence on the impact this event has had on them and whether their
symptoms were actually due to Obie=s
death and that everyone had known for approximately one year that Obie=s body was in Plot 218-1. 
It is not within the province of this court to interfere with the jury=s resolution of conflicts
in the evidence or to pass on the weight or credibility of the witnesses= testimony.  Carr v.
Jaffe Aircraft Corp., 884 S.W.2d 797, 802-03 (Tex. App.CSan Antonio 1994, no
writ).  The jury had sufficient evidence to resolve the conflicts in Estela=s, Christian=s, and Rebecca=s favor.  Its decision to
do so is not against the great weight and preponderance of the evidence.

The
distinction between Estela, Christian, and Rebecca on the one hand and Stephen
and Erica on the other is the degree of pain and impact.  Stephen=s and Erica=s testimony failed to
establish injury beyond mere emotions or the necessary substantial
disruption in daily affairs to constitute mental anguish.  Conversely, Estela,
Christian, and Rebecca established that this incident has caused more than an
emotional reaction and has resulted in substantial disruptions in their daily
affairs. 

There
is also sufficient evidence to justify the jury=s
awards.  This case does not have Ahard@ damages such as lost wages
or medical expenses to use as a benchmark.  However, it is clear that
mishandling the body of a family member can cause damage.  SCI=s former manager agreed
that one of the most devastating circumstances that can occur for an
already-grieving family is to experience a wrongful burial. Richard L. DuBois
explained how this manifests itself, testifying that this incident has cost
Estela the chance to grieve normally.








It
is also evident that the jury did not simply pick numbers at random but gave
careful consideration to this issue.  We note that the jury distinguished
between each of the plaintiffs.  Estela was the most obviously impacted and
received the highest award.  Christian and Rebecca offered similar damage
testimony.   Christian was still at home; consequently, the jury could have
reasonably concluded that he was more directly impacted.  The jury only awarded
future damages to Estela and Christian and awarded each less in future damages
than it had for past damages.  The jury=s
awards are fair and reasonable compensation based upon the evidence.  Issue
Nos. Seventeen, Eighteen, Nineteen, Twenty, and Twenty-one are granted in part
and overruled in part.  The jury=s
mental anguish awards for Estela, Christian, and Rebecca are affirmed.  The
mental anguish awards for Erica and Stephen are reversed, and judgment is
rendered that they take nothing.

5. 
Additional Damages.

Finally,
SCI challenges the legal and factual sufficiency of the evidence to support the
jury=s award of
additional damages.  The jury awarded Estela additional damages of $1,000,000
and Christian and Rebecca additional damages of $500,000.  The trial court
reduced those awards to two times actual damages, but SCI contends that the
jury=s findings are
relevant because they indicate that it operated under the passion of prejudice
against SCI.  We disagree.  Whether error exists must be measured against the
judgment actually entered.

In
this instance, an award of actual damages required proof of intentional conduct
and mental anguish.  We have previously found sufficient evidence to support
the jury=s findings of
both elements.  SCI concedes that the trial court properly reduced the
additional damages, and we note that the amount awarded by the trial court is
expressly authorized by the DTPA.  Section 17.50(b)(1).  Issue Nos. Twenty-two
and Twenty-three are overruled.

C. 
Plaintiffs=
Expert Witness. 








SCI
asserted a Daubert challenge[5] to DuBois=s testimony.  DuBois had a
masters degree in clinical psychology and provided counseling services to
Estela.  DuBois testified that Estela suffered from major depression.  SCI
complains that DuBois=s
testimony was simply the reiterated statements of Estela and that he improperly
relied upon a questionable treatment, the Aeye
movement desensitization reprocessing@
or EMDR.  SCI argues that this was insufficient foundation upon which to admit
DuBois=s testimony. 
SCI also complains that DuBois failed to supplement his deposition testimony
and failed to bring subpoenaed documents with him to trial.

In
Cooper Tire & Rubber Co. v. Mendez, 204 S.W.3d 797, 800-01 (Tex.
2006), the court held that expert testimony is admissible if the expert is
qualified, the testimony is relevant, and the expert=s opinions are based on a reliable
foundation.  A trial court=s
decision to admit expert testimony is reviewed for an abuse of discretion.  Paschal
v. Great Western Drilling, Ltd., 215 S.W.3d 437, 445 (Tex. App.CEastland 2006, pet.
denied).  The test for abuse of discretion is whether the trial court acted
without reference to any guiding rules or principles.  Admission of expert
testimony that does not meet the reliability requirement is an abuse of
discretion.  Id.  

We
do not understand SCI to argue that a counselor can never testify as an expert
but as asserting a more specific complaint that plaintiffs did not carry their
burden to establish that DuBois was qualified to testify as an expert. When SCI
challenged DuBois=s
testimony, the trial court conducted a hearing outside the jury=s presence.  DuBois
testified that he holds an M.S. in clinical psychology, is a licensed
counselor, and has twenty years experience.  He testified that Estela=s physician, Dr.
Ramanathan, referred Estela to him for counseling, and he explained his
counseling process in general.  He testified that he used the EMDR technique. 
He acknowledged that this is a controversial technique and that there are
people on both sides of the issue but testified that it is currently being used
at VA hospitals to treat people for traumatic events and that he had used it
approximately twenty-five times over the last several years.

SCI
did not offer any controverting evidence.  Following the hearing, the trial
court overruled SCI=s
objection and ruled that DuBois could testify about what he had done for Estela
and his opinions concerning the results of that treatment.  The trial court had
sufficient information upon which to conclude that DuBois was qualified to
testify as a counselor.  The mere fact that there was some controversy
regarding the EMDR technique did not make his testimony inadmissible
particularly since SCI offered no evidence to contradict DuBois=s testimony that it is
currently being utilized at VA hospitals.  








SCI
also complains that DuBois failed to bring subpoenaed records with him to trial
and that DuBois=s
deposition testimony was not properly supplemented thirty days before trial. 
The trial court did not abuse its discretion by not excluding DuBois=s testimony because he was
not a retained expert.  See Tex.
R. Civ. P. 195.6 (AIf
an expert witness is retained by, employed by, or otherwise under the control
of a party, that party must also amend or supplement any deposition testimony.@).  Issue No. Twenty-four
is overruled.

IV. 
Holding

The
judgment of the trial court is affirmed in part and reversed and rendered in
part.  That portion of the judgment awarding Erica and Stephen damages is
reversed, and judgment is rendered that they take nothing.  The remainder of
the judgment is affirmed.

 

 

RICK STRANGE

JUSTICE

 

August 7, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Tex. Bus. & Com. Code Ann.
'' 17.41-.63 (Vernon 2002 &
Supp. 2007).





[2]Section 17.50(b)(1).





[3]The trial court denied the motion.  That ruling is not
challenged on appeal.





[4]The jury did not award Rebecca future mental anguish
damages.  She does not challenge that finding on appeal.





[5]Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).