



## OPINION

No. 04-10-00546-CV

**TEXAS FARM BUREAU MUTUAL INSURANCE CO.**,
Appellant/Cross-Appellee

v.

Shannan **ROGERS** and Cristen Bazan,
as legal heirs of Cynthia Bazan, deceased,
Appellees/Cross-Appellants

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 09437B
The Honorable Charles Sherrill,[1] Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  July 27, 2011

REVERSED AND RENDERED

Appellant/cross-appellee, Texas Farm Bureau Mutual Insurance Co. ("Farm Bureau"),

appeals from the jury's verdict and award to appellees/cross-appellants, Shannan Rogers and

Cristen Bazan ("the Heirs"), in a suit involving a homeowner's insurance policy. We reverse

and render judgment that the Heirs take nothing.

---

[1] The Honorable M. Rex Emerson is the presiding judge of the 198th District Court of Kerr County. However, the Honorable Senior Judge Charles Sherrill presided over the trial as a visiting retired judge and signed the judgment at issue in this appeal.

**BACKGROUND**

In 2008, Cynthia Bazan purchased a house in Kerr County with a mortgage from Regency Solutions ("Regency"), which required her to obtain insurance on the house. Bazan applied for a homeowner's insurance policy from Farm Bureau and was initially rejected due to lack of tiling around a wood-burning stove in the house. Bazan had the stove tiled and reapplied for a policy, signing a second application. Based on the second application, Bazan was approved for a homeowner's insurance policy ("the policy"). The policy provided coverage up to $160,000 for the house itself and up to $96,000 for personal property inside the house.

On January 14, 2009, a fire completely destroyed Bazan's house and all of its contents. Bazan made a claim on the policy, and Farm Bureau began a criminal background check of Bazan and a "cause and origin" investigation of the fire. On January 16, 2009, Farm Bureau's local claims department obtained Bazan's criminal record. On January 21, 2009, Farm Bureau's fire investigator listed the cause of the fire as "undetermined." On January 22, 2009, prior to completing its criminal investigation of Bazan, Farm Bureau made a $5000 advance payment to Bazan for emergency expenses.

On January 26, 2009, Bazan admitted in an interview with a Farm Bureau claims investigator that she had a criminal record, although she expressly denied in both of her insurance policy applications that she had ever been convicted of a criminal offense. In fact, Bazan had a lengthy criminal record, including convictions for DWI, public intoxication, theft, assault, possession of a controlled substance, burglary, and forgery, as well as numerous probation violations. Farm Bureau's Waco-based underwriting manager, Gary Ryan, became aware of Bazan's criminal record on January 30, 2009 and made the decision to rescind her policy. On February 4, 2009, Farm Bureau sent notice to Bazan and Regency that it was

rescinding the policy as of the original application date and returning Bazan's premium payment based on the concealment of her criminal record on the policy application. The policy contained a provision stating:

> 2. **Concealment or Fraud.** This policy is void as to **you** and any other **insured,** if **you** or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

In its letter to Bazan, Farm Bureau informed Bazan, "[D]ue to the material misrepresentation on the original application concerning your prior criminal convictions[, w]e consider the above contract null and void . . . ."

On February 17, 2009, Farm Bureau paid Regency $127,549.69—the full balance of Bazan's mortgage lien. Farm Bureau claims this payment was required by the policy's Mortgage Clause.

On March 4, 2009, Bazan's attorney sent Farm Bureau a DTPA demand letter requesting actual damages in the amount of $256,000 (the sum of the full policy limits for both the house and its contents) plus interest from the date of loss and attorney's fees. Farm Bureau refused to pay Bazan anything more under the policy.

Bazan subsequently sued Farm Bureau for breach of contract, DTPA violations, unfair or deceptive acts or practices under the Texas Insurance Code, and negligence. She sought damages in the amount of $256,000, damages for mental anguish, treble damages under the DTPA, and attorney's fees in the amount of $155,890 ($120,890 for trial, $25,000 for appeal to the court of appeals, and $10,000 for appeal to the Supreme Court). Farm Bureau counterclaimed for fraud, seeking reimbursement for the $5000 emergency expenses payment to Bazan, for payments to local fire departments, and for the $127,549.69 mortgage payment to

Regency.  Farm Bureau later amended its claim to request only nominal damages in the amount of $1.

Bazan died on March 5, 2010, a few weeks before trial.  Two of her three children, the Heirs, filed a suggestion of death asking to proceed as their mother's legal heirs.  Farm Bureau filed a motion to show authority, arguing there were potential unknown heirs to Bazan's estate.  The trial court held a hearing on the motion and allowed the Heirs to proceed.  Farm Bureau then filed a motion to dismiss, arguing the Heirs did not have standing to pursue Bazan's DTPA claims.  In a pretrial hearing, the trial court denied the motion.

After a four-day trial, the trial court submitted twelve questions to the jury.  The jury made the following findings:

- Bazan made a material misrepresentation in the policy application;
- Farm Bureau ratified the insurance contract with Bazan;
- Farm Bureau did not engage in any unfair or deceptive act or practice with Bazan;
- Farm Bureau caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services but did not do so knowingly; and
- Farm Bureau did not fail to comply with its duty of good faith and fair dealing with Bazan.

The jury awarded the following damages to Bazan:

- Policy benefits for the house:                  $30,450.31
- Policy benefits for the house's contents:       $15,000.00
- Mental anguish:                                 $0
- Trial attorney's fees:                          $108,801.00
- Appellate attorney's fees:                      $0

The jury awarded $1 to Farm Bureau on its counterclaim.

Both parties subsequently filed motions for judgment notwithstanding the verdict ("JNOV").  The Heirs argued in their motion that they were entitled to the full $160,000 policy limit for the house, the full $96,000 policy limit for the house's contents, and $120,890 for trial attorney's fees.  Farm Bureau argued in its motion that (1) the issue of ratification should not

have been submitted to the jury; (2) there was no evidence Farm Bureau caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) the Heirs lacked standing to pursue Bazan's DTPA claim; (4) the Heirs waived any right to contract damages because they failed to submit a breach of contract question to the jury; and (5) the Heirs had no right to attorney's fees. The trial court held a hearing on the motions for JNOV, following which it denied Farm Bureau's motion and granted in part the Heirs' motion, awarding the Heirs the full $96,000 policy limit for the contents of the house, as well as appellate attorney's fees. The trial court later denied Farm Bureau's motion to modify the judgment.

## HEIRS' STANDING TO BRING DTPA CLAIM

In its first issue, Farm Bureau argues Bazan's DTPA claim did not survive her death and, therefore, the Heirs did not have standing to pursue the claim at trial. This court has repeatedly held that a DTPA claim does not survive the death of the original consumer. *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401–02 (Tex. App.—San Antonio 2000, no pet.) (parents of deceased child could not pursue child's DTPA claims for defective pool in which he drowned); *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 609 (Tex. App.—San Antonio 1996, no writ) (representative of deceased insured's estate could not bring insured's DTPA claims against insurance company); *First Nat'l Bank of Kerrville v. Hackworth*, 673 S.W.2d 218, 221 (Tex. App.—San Antonio 1984, no writ) (en banc) (deceased bank customer's estate could not bring customer's DTPA claims against bank). In *Hackworth*, this court held that a deceased consumer's estate cannot pursue a cause of action under the DTPA because the statute does not explicitly provide for survival and because the right to recovery under the DTPA is punitive in nature—"a purely personal right." 673 S.W.2d at 220–21. Similarly, in *Lukasik*, this court held that the parents of a deceased child did not have standing to pursue their child's

DTPA claims either as representatives of the child's estate or as individuals because they were not "consumers" as defined by the statute. 21 S.W.3d at 402.

Here, Farm Bureau raised the survivability issue in a pretrial motion to dismiss for lack of standing. Farm Bureau argued the Heirs did not have standing to bring Bazan's DTPA claims either individually or as the beneficiaries of Bazan's estate because this court has held DTPA claims do not survive the death of the consumer. The trial court held a hearing and denied the motion, permitting the Heirs to proceed to trial. Because this court has held DTPA claims do not survive the death of the plaintiff-consumer and cannot be pursued by the consumer's estate or by individual beneficiaries of the consumer's estate who are not themselves "consumers," the Heirs in this case did not have standing to pursue Bazan's DTPA cause of action. Therefore, the jury's finding on the DTPA cause of action that Farm Bureau caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services will not support an award of damages. Accordingly, we next consider whether the jury's finding that Farm Bureau ratified the insurance contract supports an award of damages and attorney's fees.

### RATIFICATION

In its second issue, Farm Bureau argues that because the contract as to Bazan was void based on Bazan's material misrepresentation, it could not be ratified; therefore, Farm Bureau contends the jury's finding that it ratified the insurance contract with Bazan is immaterial and has no legal basis.

To void an insurance policy based on the insured's misrepresentation(s) in the policy application, the insurer has the burden to plead and prove the following: (1) the insured made a representation, (2) the representation was false, (3) the insurer relied upon the false representation, (4) the insured made the false representation with the intent to deceive the

insurer, and (5) the false representation was material. *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980); *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 431 (Tex. App.—San Antonio 1993, writ denied). "[M]ateriality of the risk must be viewed as of the time of the issuance of the policy, rather than at the time the loss occurred, and . . . the principal inquiry in determining materiality is whether the insurer would have accepted the risk if the true facts had been disclosed." *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 29 (Tex. 1978). As a general rule, a void contract cannot be ratified. *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 555–56 (Tex. 2001) (Baker, J., dissenting); *Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

Here, the policy stated:

> 2. **Concealment or Fraud.** This policy is void as to **you** and any other **insured,** if **you** or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

The jury was instructed as follows:

> You are instructed that a material misrepresentation occurs in an insurance contract setting when:
>
> 1) a person makes a representation
> 2) that is false
> 3) that is relied upon by the insurer
> 4) the misrepresentation is made with the intent to deceive on the part of the insured in making the application
> 5) the misrepresentation is material
>
> "Misrepresentation" means a false statement of fact, including but not limited to concealment and failure to disclose.
>
> "**Material**" means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.

In answering whether or not a misrepresentation, if any, which you may find is material, you must view the circumstances from the standpoint of [Farm Bureau] at the time of the issuance of the policy to Cynthia Bazan.

You are instructed that under the law the intent to induce is the same as the intent to deceive.

The jury answered "YES" to Question 1 ("Did CYNTHIA BAZAN make a material misrepresentation to [FARM BUREAU] in her applications for insurance?"). Because the jury found Bazan made a material misrepresentation in her policy application, the policy was void and could not be ratified. *See Jack*, 694 S.W.2d at 397. Therefore, the jury's finding that Farm Bureau ratified the insurance contract was immaterial and will not support an award of damages and attorney's fees.

### CONCLUSION

Because the jury's findings on the DTPA claim and the issue of ratification cannot support the award of damages and attorney's fees in this case, we need not address Farm Bureau's remaining issues on appeal, nor need we address the Heirs' sole issue on cross-appeal (whether they are entitled to the full $160,000 policy limit for Bazan's house). We reverse the trial court's judgment and render judgment that the Heirs take nothing.


Sandee Bryan Marion, Justice